RECEIPT NUMBER
200529599
ORIGINAL
20'

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KATIE ANNE PLATTE, ASHLEY BERDEN,
CULLIN STEWART, and SAMUEL PAUL MANESS,

    Plaintiffs,

v.

THOMAS TOWNSHIP, a Municipal Corporation;
CITY OF MOUNT PLEASANT, a Municipal Corporation;
STANLEY A. DINIUS, in his Official Capacity as Director/
Chief of Police of the Central Michigan University Police
Department; ISABELLA COUNTY, a Municipal Corporation;
JENNIFER M. GRANHOLM, in her Official Capacity
as Governor of the State of Michigan; COLONEL
TADARIAL STURDIVANT, in his Official Capacity as
Director of the Michigan Department of State Police,

    Defendants.

_____/

JUDGE : Lawson, David M.
DECK  : Bay City Civ Deck
DATE  : 08/04/2005 @ 11:30:00
CASE NUMBER : 1:05CV10200
CMP KATIE ANN PLATTE ET AL VS
THOMAS TOWNSHIP ET AL (LE) SI

MAGISTRATE JUDGE BINDER

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

    Plaintiffs, through their attorneys, state as follows for their Complaint:

### INTRODUCTION

    1.    Plaintiffs Katie Anne Platte, Ashley Berden, Cullin Stewart and Samuel Maness bring this action under 42 U.S.C. § 1983, challenging the constitutionality of defendants' policy and practice of requiring individuals who are twenty years old or younger to submit to breathalyzer tests to measure their alcohol consumption without first procuring a search warrant. Defendants, acting under color of state law and pursuant to Mich. Comp. Laws § 436.1703(6) [formerly § 436.1703(5)],

1

have deprived plaintiffs of their Fourth Amendment right to be free from unreasonable searches, because defendants required plaintiffs to submit to breathalyzer tests even though plaintiffs were not driving and defendants did not have a search warrant or make a valid arrest. There are no exceptions to the warrant requirement which apply to the searches authorized by Mich. Comp. Laws § 436.1703(6) and described herein.

2. Mich. Comp. Laws § 436.1703(6) [formerly § 436.1703(5)] provides, in relevant part:

> A peace officer who has reasonable cause to believe a minor has consumed alcoholic liquor or has any bodily alcohol content may require the person to submit to a preliminary chemical breath analysis. . . . A minor who refuses to submit to a preliminary chemical breath test analysis as required in this subsection is responsible for a state civil infraction and may be ordered to pay a civil fine of not more than $100.

3. A breathalyzer test is a search under the Fourth Amendment.

4. The purpose of a breathalyzer test under Mich. Comp. Laws § 436.1703(6) [formerly § 436.1703(5)] is to gather evidence of a misdemeanor.

5. Plaintiffs, who were not driving and not under arrest, had a constitutional right to refuse to submit to these warrantless searches.

6. Among the relief plaintiffs seek is a declaration that their Fourth Amendment rights were violated when they were forced to submit to a breathalyzer test although no warrant had been procured; a declaration that Mich. Comp. Laws § 436.1703(6), and the policy and practice of its enforcement by defendants, violates the Fourth Amendment when it is applied to non-drivers like plaintiffs; and an order enjoining defendants from continuing to enforce those portions of Mich. Comp. Laws § 436.1703(6) to the extent it authorizes police officers to force minor non-drivers to submit to warrantless breathalyzer tests upon penalty of a civil infraction. Additionally, plaintiffs

seek damages for being forced to submit to a breathalyzer test in violation of their Fourth Amendment rights.

## JURISDICTION AND VENUE

7. Plaintiffs bring this action pursuant to the Fourth Amendment of the U.S. Constitution and 42 U.S.C. § 1983, seeking declaratory and injunctive relief and an award of damages to redress the deprivation of rights guaranteed to them by the Constitution and the laws of the United States. This court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (original jurisdiction over civil rights claims), and 28 U.S.C. §§ 2201 and 2202 (declaratory relief).

8. Venue is properly laid in the Eastern District of Michigan, Northern Division, pursuant to 28 U.S.C. § 1391(b), this being the judicial district where some defendants reside and where the events and omissions giving rise to this action occurred and will occur.

## PARTIES

9. Plaintiff Katie Ann Platte is twenty years old and was nineteen years old at the time of the events giving rise to this cause of action. She is a 2003 graduate of Swan Valley High School in Thomas Township where she was the class valedictorian, and is currently enrolled in college.

10. Plaintiff Ashley Berden is twenty years old and was under age twenty at the time of the events giving rise to this cause of action. She is a 2003 graduate of Swan Valley High School and is currently enrolled in college.

11. Plaintiff Cullin Stewart is nineteen years old and was eighteen years old at the time of the events giving rise to this cause of action. He is a 2003 graduate of Mount Pleasant High School and is currently enrolled in college.

12. Plaintiff Samuel Maness is eighteen years old. He was seventeen years old when the

3

events giving rise to this action began. He is a 2003 graduate of Mount Pleasant High School and is currently enrolled in college.

13. Defendant Thomas Township, a municipal corporation, located in Saginaw County, Michigan, is organized under the laws of Michigan and is subject to the laws and constitutions of the state of Michigan and the United States. Defendant Thomas Township is, and at all times referenced in this Complaint was, responsible for assuring that the actions, omissions, policies, practices and customs of the Thomas Township Police Department and its employees complied with the United States Constitution.

14. Defendant City of Mount Pleasant, a municipal corporation, located in Isabella County, Michigan, is organized under the laws of Michigan and is subject to the laws and constitutions of the state of Michigan and the United States. Defendant City of Mount Pleasant is, and at all times referenced in this Complaint was, responsible for assuring that the actions, omissions, policies, practices and customs of the Mount Pleasant Police Department and its employees complied with the United States Constitution.

15. Defendant Chief Stanley A. Dinius is, and at all times referenced in this Complaint was, the duly appointed Director/Chief of the Central Michigan University Police Department, a public university located in the City of Mount Pleasant, Michigan. He is, and at all times referenced in this Complaint was, responsible for the implementation and enforcement of Mich. Comp. Laws § 436.1703(6) through the Central Michigan University police officers that are subject to his control and direction. He is sued in his official capacity.

16. Defendant Isabella County, a municipal corporation, is organized under the laws of Michigan and is subject to the laws and constitutions of the state of Michigan and the United States.

Defendant Isabella County is, and at all times referenced in this Complaint was, responsible for assuring that the actions, omission, policies, practices and customs of the Isabella County Sheriff's Department and its employees complied with the United States Constitution.

17. Defendant Jennifer M. Granholm is, and at all times referenced in this Complaint was, Governor of the state of Michigan. She is, and at all times referenced in this Complaint was, responsible for the implementation of Mich. Comp. Laws § 436.1703(6) through the state agencies that are subject to her control and direction. She is sued in her official capacity.

18. Defendant Colonel Tadarial Sturdivant is, and at all times referenced in this Complaint was, the duly appointed Director of the Michigan State Police Department. He is, and at all times referenced in this Complaint was, responsible for the implementation and enforcement of Mich. Comp. Laws § 436.1703(6) through the Michigan state police officers that are subject to his control and direction. He is sued in his official capacity.

## FACTS

### The Relevant Statute: MCL § 436.1703(6)

19. Mich. Comp. Law § 436.1703(6) [formerly § 436.1703(5)] states, in its entirety:

> A peace officer who has reasonable cause to believe a minor has consumed alcoholic liquor or has any bodily alcohol content may require the person to submit to a preliminary chemical breath analysis. A peace officer may arrest a person based in whole or in part upon the results of a preliminary chemical breath analysis. The results of a preliminary chemical breath analysis or other acceptable blood alcohol test are admissible in a criminal prosecution to determine whether the minor has consumed or possessed alcoholic liquor or has any bodily alcohol content. A minor who refuses to submit to a preliminary chemical breath analysis as required in this subsection is responsible for a state civil infraction and may be

ordered to pay a civil fine of not more than $100.00.[1]

20. Mich. Comp. Laws § 436.1703(6) does not require that a police officer obtain a warrant before requiring a non-driving minor to take a breathalyzer test; it allows a police officer to perform warrantless breathalyzer tests on minors for the purpose of obtaining evidence to be used to convict a minor under Mich. Comp. Laws § 436.1703, a misdemeanor that imposes no jail for a first offense.

### The Enforcement of MCL § 436.1703(6) against Katie Anne Platte

21. On July 23, 2004, Katie Anne Platte went to a small get-together at the house of Joseph Michael Latty in Thomas Township. The get-together was in honor of Justin Reppuhn a high school classmate who had enlisted in the Marines and who was going to be sent to Iraq. In November 2004, Mr. Reppuhn was killed in Iraq.

22. Platte saw other high school classmates at the gathering, including but not limited to Ashley Berden.

23. Platte did not drink any alcoholic beverages at the gathering.

24. When Thomas Township police officers showed up at the gathering, everyone went inside. The police demanded to come in the house. However, Joe Latty told the officers that they could not come in unless they had a warrant.

25. The officers waited outside the house for about one and a half hours. The police threatened to take Platte and her friends to jail.

---

[1] At the time of the events predicating this Complaint, the provisions were set forth at § 436.1703(5) and did not contain reference to the phrase "or has any bodily alcohol content." This statutory amendment, by P.A. 2004 No. 63 (effective September 1, 2004), does not affect the relief sought in this Complaint. The provisions shall be stated herein as § 436.1703(6).

26. Eventually, an attorney who is a friend of Platte's family and a friend of Joe Latty's family, came over to the house and negotiated with the police.

27. When Platte and her friends came out of the house, the police did not allow them to leave.

28. Platte and her friends were forced to wait 10 to 15 minutes until a police officer returned with breathalyzer machines.

29. Platte and her friends were told that if they refused to take the test they would be violating the law.

30. When she was forced to take a breathalyzer test, Platte was not under arrest for any crime.

31. Platte was not shown a warrant for a breathalyzer test.

32. The purpose of the breathalyzer test was to gather evidence of a misdemeanor.

33. There were no exigent circumstances that would have allowed the officers to suspend the requirements of procuring a search warrant.

34. The administration of a breathalyzer test does not fall within the "special needs" doctrine of the Fourth Amendment because the purpose of the test is to gather evidence of a misdemeanor.

35. Platte's breath test registered a .00% blood-alcohol level. Since Platte had not been drinking alcohol, the police allowed her to leave.

36. The police in Thomas Township frequently break up parties attended by young adults and force everyone at the party under the age of 21 to submit to breathalyzer tests. Platte has many friends who have repeatedly been forced by the Thomas Township police to take breathalyzer tests

7

even though the police did not have a warrant and even though her friends were not driving.

37. It is the policy, practice and/or custom of Thomas Township and its police to require that a non-driving individual under the age of twenty-one submit to a breathalyzer test when an officer, under the direction and supervision of Thomas Township, has reasonable cause to believe that he or she has been drinking alcohol.

38. It is the policy, practice and/or custom of Thomas Township and its officers, to administer these breathalyzer tests, pursuant to Mich. Comp. Laws § 436.1703(6) without first seeking a search warrant -- the results of which may be used in a prosecution for the crime of minor in possession of alcohol.

39. It is the policy, practice and/or custom of Thomas Township and its officers to require minor individuals like plaintiffs to submit to breathalyzer tests, without first procuring a warrant, when they are at a party, leaving a party, walking down the street together at night or driving together at night.

40. Because of the very aggressive way the Thomas Township police officers enforce the so-called "minor-in-possession" law [now Mich. Comp. Laws § 436.1703(6)] and force young adults to take breathalyzer tests without a warrant, Platte no longer attends parties of young adults in Thomas Township at night – for fear of being forced again to take a breathalyzer test even if she has abstained from drinking alcohol. But for Thomas Township's aggressive enforcement of the law requiring that young adults under 21 years old submit to breathalyzer tests without a warrant, Platte would attend parties in Thomas Township – including parties with high school friends of Platte who live in Thomas Township and with her brother who lives in Thomas Township.

8

### The Enforcement of MCL § 436.1703(6) against Ashley Berden

41. On July 23, 2004, Ashley Berden went to the get-together at the house of Joseph Michael Latty in Thomas Township in honor of Justin Reppuhn -- the same get-together attended by Katie Anne Platte as set forth above in this Complaint.

42. When Thomas Township police officers showed up at the gathering, Berden was among the attendees who went inside the house.

43. The police demanded to come in the house.

44. However, Joe Latty told the officers that they could not come in unless they had a warrant.

45. When the attendees including Berden came out of the house approximately an hour and a half later, the police did not allow them to leave.

46. Berden asked one of the officers – Officer Heitzig – if she could go out back and get her personal effects inside the house. Officer Heitzig asked Berden what her name was and she said that her name was Ashley. He said, "Berden?" Berden replied, "Yes." He then said that he did not like Berden and placed her in the back of the police vehicle.

47. Berden was confined in the police car for approximately 15 to 30 minutes.

48. Eventually, another officer of the Thomas Township police department – Officer Ross – came into the police car and told Berden that she had to take a breathalyzer test.

49. Officer Ross told her that if she refused to take the test, she would be violating the law.

50. Berden was not under arrest for any crime when she was forced to take a breath test.

51. The police did not have a warrant requiring Berden to take a breath test.

9

52. The purpose of the breath test was to gather evidence of a misdemeanor.

53. Officer Ross told Berden and others that if they refused to take a breath test they would go to jail.

54. It is a civil infraction under the state Minor in Possession (MIP) law for a person under 21 years old to refuse to take a breath test when asked to do so by a police officer.

55. There were no exigent circumstances that would have allowed the officers to suspend the requirements of procuring a search warrant.

56. The administration of a breathalyzer test does not fall within the "special needs" doctrine of the Fourth Amendment because the purpose of the test is to gather evidence of a misdemeanor.

57. Berden's breath test registered a .00% blood-alcohol level, indicating that she had not been drinking alcohol.

58. The police then let Berden leave the premises.

59. The Thomas Township Police Department has a reputation of aggressively enforcing the state MIP law and forcing young adults to take breathalyzer tests without first obtaining search warrants.

60. Berden has been forcibly subjected to other breathalyzer tests even though the police did not have a search warrant, even though she was not driving and even though she was not drinking alcohol.

61. For example, on or about the night of June 7, 2003, when Berden was 18 years of age, she attended a party at Katrina Darling's house to celebrate her graduation from Swan Valley High School.

10

62. Berden left the party to go home and left her purse at Katrina's house.

63. After Berden left the party, Thomas Township police officers broke up the party and found her purse.

64. The police then came to Berden's house at 4:00 a.m., woke up her family and demanded that she take a breath test. Her parents came up to her room and told her that the police were here to see her. She went outside and the police did not have a warrant.

65. The police told Berden that she would be violating the law if she refused the test. The police did not produce a warrant for the test.

66. The test registered a .00% blood-alcohol level, indicating that Berden had not been drinking.

67. Berden was not under arrest for any crime when she was forced to take a breath test.

68. Based on the repeated experiences of herself and her friends, Berden fears further forced breath tests – even if she has not been drinking alcohol, even if the police do not have a warrant, and even if she has not been placed under arrest for anything. She continues to attend parties with her friends in Thomas Township on a regular basis.

69. It is the policy, practice and/or custom of Thomas Township and its police to require that a non-driving individual under the age of twenty-one submit to a breathalyzer test when an officer, under the direction and supervision of Thomas Township, has reasonable cause to believe that he or she has been drinking alcohol.

70. It is the policy, practice and/or custom of Thomas Township and its officers to administer these breathalyzer tests, pursuant to Mich. Comp. Laws § 436.1703(6) without first seeking a search warrant -- the results of which may be used in a prosecution for the crime of minor

11

in possession of alcohol.

71. It is the policy, practice and/or custom of Thomas Township and its officers to require minor individuals like plaintiffs to submit to breathalyzer tests, without first procuring a warrant, when they are at a party, leaving a party, walking down the street together at night or driving together at night.

### The Enforcement of MCL § 436.1703(6) against Stewart and Maness

72. On May 3, 2003, Cullin Stewart and Samuel Maness attended a party in Deerfield Township, in Isabella County. The party followed the Mount Pleasant High School Prom and was hosted and chaperoned by the parent of a Mount Pleasant High School student.

73. The party was raided by an interagency police task force that refers to itself as the "Party Patrol." The Party Patrol is comprised of officers from the Mount Pleasant Police Department, the Central Michigan University Police Department, the Isabella County Sheriff's Department, and the Michigan State Police Department.

74. Upon arrival, the Party Patrol began grabbing students, including plaintiffs Stewart and Maness, and forcing them to the ground. The students were then placed in a circle and asked whether or not they had consumed any alcohol.

75. Stewart stated truthfully that he had not been drinking, but was nonetheless required to submit to a breathalyzer test.

76. The officers did not procure a search warrant requiring plaintiffs Stewart and Maness to take a breathalyzer test prior to administering the test.

77. The officers never placed plaintiffs under arrest for violating any law or ordinance prior to administering the test.

12

78. There were no exigent circumstances that would have allowed the officers to suspend the requirements of procuring a search warrant.

79. The administration of a breathalyzer test does not fall within the "special needs" doctrine of the Fourth Amendment because the purpose of the test is to gather evidence of a misdemeanor.

80. The students at the prom party, including plaintiffs Stewart and Maness, were not given an option to refuse the breathalyzer test because refusal to take the breathalyzer test would have resulted in a civil infraction and a fine.

81. The officers administered the breathalyzer tests to Stewart and Maness under threat of civil infraction and fine.

82. The purpose of the breathalyzer tests was to gather evidence of a misdemeanor.

83. Plaintiffs Stewart and Maness were detained for approximately ninety minutes by the Party Patrol.

84. The breathalyzer tests confirmed that Stewart had not consumed any alcohol.

85. The breathalyzer tests indicated that Maness had consumed alcohol. Officer Ballard, of the Central Michigan University Police Department, issued him a ticket for Minor in Possession of Alcohol (MIP) under Mich. Comp. Laws § 436.1703(1)(b), a misdemeanor.

86. Since May 2003, police officers from defendant police agencies have required that Maness submit to a breathalyzer test three different times, including the incident on May 3, 2003 described above, even though he was not driving and even though the police did not have a search warrant stating that he had to submit to a breathalyzer test.

87. On or about June 3, 2003, Maness was walking in an apartment complex in Mount

13

Pleasant called Chippewa Village with a group of friends when they were approached by Mount Pleasant Police Department police officer.

88. Everyone in the group was required to submit to a breathalyzer test even though they were not driving and the officers had not obtained a search warrant.

89. On or about January 29, 2004, Maness was a passenger in a car that was stopped by Central Michigan University Department police officers.

90. Maness was forcibly administered a breathalyzer test, like the four other passengers, even though he was not driving and no warrant was procured.

91. It is the policy, practice and/or custom of each of the defendants to require that a non-driving individual under the age of twenty-one submit to a breathalyzer test when an officer, under the direction and supervision of defendants, has reasonable cause to believe that he or she has been drinking alcohol.

92. It is the policy, practice and/or custom of officers, under the direction and supervision of defendants, to administer these breathalyzer tests, pursuant to Mich. Comp. Laws § 436.1703(6) without first seeking a search warrant -- the results of which may be used in a prosecution for the crime of minor in possession of alcohol.

93. It is the policy, practice and/or custom of officers, under the direction and supervision of defendants, to require minor individuals like plaintiffs to submit to breathalyzer tests, without first procuring a warrant, when they are at a party, leaving a party, walking down the street together at night or driving together at night.

94. Because Maness has been forced to take three warrantless breathalyzer tests in one year and because he will continue to spend time with friends in Mount Pleasant, attend parties at

night, walk down the street at night, and drive in cars with friends at night, he faces the imminent threat of again being subject to defendants' policy, practice and/or custom of conducting warrantless searches in violation of the Fourth Amendment.

95. Because of defendants' policy, practice and/or custom of requiring non-driving minors to submit to breathalyzer tests when they are at a party, leaving a party, or socializing together in public at night, Stewart now avoids going to parties and socializing with friends in public at night when in Mount Pleasant. But for defendants' policy of enforcing Mich. Comp. Laws § 436.1703(6), Stewart would go to parties and socialize with friends in public, at night, when in Mount Pleasant.

## CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT

96. Plaintiffs incorporate by reference all prior paragraphs as though repeated paragraph by paragraph and word for word herein.

97. Defendants violated plaintiffs' right to be free from unlawful search and seizure, in violation of the Fourth Amendment of the U.S. Constitution and actionable under 42 U.S.C. § 1983, by requiring plaintiffs to submit to a search through the use of breathalyzer tests, without a search warrant, a valid arrest, exigent circumstances, or "special needs" that would suspend the requirement of a search warrant.

98. A breathalyzer test is a search within the meaning of the Fourth Amendment.

99. At all relevant times, defendants were acting under color of state law.

100. Police officers, acting under the supervision and direction of defendants, and as authorized by state law, did not procure a search warrant before conducting the searches described

herein.

101. No exigent circumstances existed that would allow the officers, under the supervision and direction of defendants, to suspend the constitutional mandate of securing a search warrant before requiring plaintiffs to submit to the searches described herein.

102. The gathering of evidence for criminal prosecution is not a "special need" which would suspend the constitutional mandate for securing a search warrant before requiring plaintiffs to submit to the searches described herein.

103. Plaintiffs were never arrested before being forced to submit to the searches described herein.

104. Plaintiffs were not driving at the time of the searches described herein, and so did not impliedly consent to those searches.

105. Plaintiffs did not voluntarily consent to the searches described herein; if they had refused they would have been issued a civil infraction and a fine.

106. It is the policy, practice and/or custom of defendants to require that non-driving individuals under the age of twenty-one submit to breathalyzer tests when they have reasonable cause to believe they have been drinking alcohol, even when no search warrant has been procured, there has been no valid arrest, and no exigent circumstances or "special needs" exist that would suspend the requirement of procuring a search warrant.

107. Defendants violated the Fourth Amendment by implementing and enforcing Mich. Comp. Laws § 436.1703(6), a law that penalized individuals for exercising their constitutional right to refuse to consent to warrantless searches.

108. Plaintiffs are irreparably harmed by the existence and enforcement of defendants'

16

unconstitutional policy, practice and/or custom of subjecting non-driving individuals under the age of twenty-one to unlawful searches and seizures.

109. No adequate remedy exists at law to redress this unconstitutional policy, practice and/or custom.

110. Injunctive relief would be in the public interest and would not cause substantial harm to others.

111. As a direct and proximate result of defendants' policies and practices, plaintiffs suffered the following injuries and damages:

    a. Anxiety, fear and intimidation;

    b. Loss of liberty interest;

    c. Unlawful search;

    d. Unlawful seizure; and

    e. Unlawful detention.

## RELIEF REQUESTED

WHEREFORE, plaintiffs respectfully request that this Court enter a judgment against defendants as follows:

A. A declaration that plaintiffs' Fourth Amendment rights were violated when they were forced to submit to a breathalyzer test although no warrant had been procured;

B. A declaration that Mich. Comp. Laws § 436.1703(6) [formerly § 436.1703(5)] violates the Fourth Amendment to the extent it authorizes police officers to force minor non-drivers to submit to warrantless breathalyzer tests upon penalty of a civil infraction;

C. A declaration that defendants have violated the Fourth Amendment through their

17

policy and practice of requiring non-driving individuals under the age of twenty-one, like plaintiffs, to submit to a breathalyzer test even though no warrant has been procured and no exceptions to the search warrant requirements exist;

D.   Enter a preliminary and permanent injunction prohibiting defendants from enforcing Mich. Comp. Laws § 436.1703(6) to the extent it authorizes police officers to force minor non-drivers to submit to a warrantless breathalyzer tests upon penalty of a civil infraction;

E.   Damages for plaintiffs;

F.   Costs and attorneys fees pursuant to 42 U.S.C. § 1988; and

G.   Such other relief that this Court deems just and equitable.

Respectfully submitted,

Marshall J. Widick (P53942)
Cooperating Attorney, American Civil
    Liberties Union Fund of Michigan
Sachs Waldman, Professional Corporation
1000 Farmer Street
Detroit, MI  48226
(313) 965-3464

Michael J. Steinberg (P43085)
Kary L. Moss
Attorneys, American Civil
    Liberties Union Fund of Michigan
60 West Hancock Street
Detroit, MI  48201
(313) 578-6800, ext. 814

William T. Street (P25407)
Cooperating Attorney, American Civil
    Liberties Union Fund of Michigan
1500 E. Genesee Ave.
Saginaw, MI  48607-1754
(989) 752-5406

David A. Moran (P45353)
Cooperating Attorney, American Civil
    Liberties Union Fund of Michigan
Wayne State University Law School
471 W. Palmer Street
Detroit, MI 48202
(313) 577-4829

Dated: August 4, 2005

JS 44 11/99 **CIVIL COVER SHEET** COUNTY IN WHICH THIS ACTION AROSE: Isabella County, Saginaw County

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

## I. (a) PLAINTIFFS

KATIE ANNE PLATTE, ASHLEY BERDEN, CULLIN STEWART, and SAMUEL PAUL MANESS

(b) County of Residence of First Listed: Saginaw County

(C) Attorney's (Firm Name, Address, and Telephone Number)
Marshall J. Widick (P53942)
Sachs Waldman, P.C.
1000 Farmer St./Detroit, MI 48226/313-496-9472

## DEFENDANTS

THOMAS TOWNSHIP, a Municipal Corporation, et al

SEE ATTACHED SHEET    **05-10200**

County of Residence of First Listed: Saginaw County
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)    DAVID M. LAWSON

MAGISTRATE JUDGE BINDER

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PLA | DEF | | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21:881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel And Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC |
| ☐ 150 Recovery of Overpayment and Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | **PERSONAL INJURY** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | ☐ 362 Personal Injury- Med. Malpractice | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 365 Personal Injury - Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | **PERSONAL PROPERTY** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | [X] 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 370 Other Fraud | | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 371 Truth in Lending | | | |
| ☐ 290 All Other Real Property | ☐ 380 Other Personal Property Damage | | | |
| | ☐ 385 Property Damage Product Liability | | | |
| | **CIVIL RIGHTS** | | | |
| | ☐ 441 Voting | | | |
| | ☐ 442 Employment | | | |
| | ☐ 443 Housing/Accommodations | | | |
| | ☐ 444 Welfare | | | |
| | ☐ 440 Other Civil Rights | | | |
| | **PRISONER PETITIONS** | | | |
| | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | | | |
| | ☐ 530 General | | | |
| | ☐ 535 Death Penalty | | | |
| | ☐ 540 Mandamus & Other | | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

[X] 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multi district Litigation  ☐ 7 Appeal to District Judge from Magistrate

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Suit is filed pursuant to 42 U.S.C. §1983 challenging constitutionality of Mich. Comp. Laws §436.1703(b) for violation of rights under the Fourth Amendment to the United States Constitution

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    $ DEMAND    CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  [X] No

## VIII. RELATED CASE(S) IF ANY (See Instructions):

JUDGE    DOCKET NUMBER

DATE: August 4, 2005

SIGNATURE OF ATTORNEY OF RECORD: Marshall Widick (P53942)

**DEFENDANTS**

THOMAS TOWNSHIP, a Municipal Corporation;
CITY OF MOUNT PLEASANT, a Municipal Corporation;
STANLEY A. DINIUS, in his Official Capacity as Director/
Chief of Police of the Central Michigan University Police
Department; ISABELLA COUNTY, a Municipal Corporation;
JENNIFER M. GRANHOLM, in her Official Capacity
as Governor of the State of Michigan; COLONEL
TADARIAL STURDIVANT, in his Official Capacity as
Director of the Michigan Department of State Police,