**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

KATIE ANNE PLATTE, ASHLEY BERDEN,
CULLIN STEWART, and SAMUEL PAUL MANESS,

        Plaintiffs,

Case No. 1:05-CV-10200
Honorable David M. Lawson

v.

THOMAS TOWNSHIP, a Municipal Corporation;
CITY OF MOUNT PLEASANT, a Municipal Corporation;
STANLEY A. DINIUS, in his Official Capacity as Director/
Chief of Police of the Central Michigan University Police
Department; ISABELLA COUNTY, a Municipal Corporation;
JENNIFER M. GRANHOLM, in her Official Capacity
as Governor of the State of Michigan; COLONEL
TADARIAL STURDIVANT, in his Official Capacity as
Director of the Michigan Department of State Police,

        Defendants.
_____/

Marshall J. Widick (P53942)
Sachs Waldman, P.C.
Cooperating Attorney for the ACLU Fund of MI
1000 Farmer Street
Detroit, MI 48226
(313) 496-9472

Michael J. Steinberg (P43085)
Kary L. Moss
Attorneys, American Civil Liberties Union Fund of MI
60 West Hancock Street
Detroit, MI 48201
313-578-6800 ext. 814

William T. Street (P25407)
Cooperating Attorney, American Civil
  Liberties Union Fund of Michigan
1500 E. Genesee Ave.
Saginaw, MI 48607-1754

Michael E. Cavanaugh (P11744)
Fraser Trebilcock Davis & Dunlap, P.C.
Attorneys for Defendant Stanley A. Dinius
124 W. Allegan, Suite 1000
Lansing, MI 48933
517-482-5800

Patrick A. Aseltyne (P23293)
Jason D. Kolkema  (P55936)
Johnson, Rosati, LaBarge, Aseltyne & Field, P.C.
Attorney for City of Mt. Pleasant and Isabella County
303 Waverly Road
Lansing, MI 48917
(517) 886-3800

Gus G. Morris (P32960)
Kupelian Ormond & Magy, P.C.
Attorney for Thomas Township
25800 Northwestern Hwy, 9th Floor
P.O. Box 197
Southfield, MI 48037
(248) 357-1000

David A. Moran (P45353)
Cooperating Attorney, American Civil Liberties Union
      Fund of Michigan
Wayne State University Law School
471 W. Palmer Street
Detroit, MI 48202
313-577-4829

Margaret A. Nelson (P30342)
Assistant Attorney General
Public Employment, Elections & Tort Division
525 W. Ottawa
P.O. Box 30212
Lansing, MI 48909
517-373-6434

## DEFENDANT CHAMPION'S MOTION FOR DISMISSAL

## * * * * ORAL ARGUMENT REQUESTED * * * *

**NOW COMES** the Defendants, City of Mt. Pleasant and Isabella County by and through his attorneys, **JOHNSON, ROSATI, LaBARGE, ASELTYNE & FIELD, P.C.**, by Jason D. Kolkema, and moves this Court for dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), for the reasons set forth in the accompanying Brief in Support.

    Respectfully submitted,

    JOHNSON, ROSATI, LaBARGE,
    ASELTYNE & FIELD, P.C.

    By: /s/ Jason D.Kolkema
        Jason D. Kolkema  (P55936)
        Attorneys for Defendants Isabella County and City of Mt. Pleasant Only
        303 S. Waverly Rd.
        Lansing, MI 48917
        (517)886-3800

Dated:  September 12, 2005

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KATIE ANNE PLATTE, ASHLEY BERDEN,
CULLIN STEWART, and SAMUEL PAUL MANESS,

       Plaintiffs,                                 Case No. 1:05-CV-10200
                                                           Honorable David M. Lawson

v.

THOMAS TOWNSHIP, a Municipal Corporation;
CITY OF MOUNT PLEASANT, a Municipal Corporation;
STANLEY A. DINIUS, in his Official Capacity as Director/
Chief of Police of the Central Michigan University Police
Department; ISABELLA COUNTY, a Municipal Corporation;
JENNIFER M. GRANHOLM, in her Official Capacity
as Governor of the State of Michigan; COLONEL
TADARIAL STURDIVANT, in his Official Capacity as
Director of the Michigan Department of State Police,

       Defendants.
_____/

| | |
|---|---|
| Marshall J. Widick (P53942) | Patrick A. Aseltyne (P23293) |
| Sachs Waldman, P.C. | Jason D. Kolkema  (P55936) |
| Cooperating Attorney for the ACLU Fund of MI | Johnson, Rosati, LaBarge, Aseltyne & Field, P.C. |
| 1000 Farmer Street | Attorney for City of Mt. Pleasant and Isabella County |
| Detroit, MI 48226 | 303 Waverly Road |
| (313) 496-9472 | Lansing, MI 48917 |
| | (517) 886-3800 |
| Michael J. Steinberg (P43085) | |
| Kary L. Moss | Gus G. Morris (P32960) |
| Attorneys, American Civil Liberties Union Fund of MI | Kupelian Ormond & Magy, P.C. |
| 60 West Hancock Street | Attorney for Thomas Township |
| Detroit, MI 48201 | 25800 Northwestern Hwy, 9th Floor |
| 313-578-6800 ext. 814 | P.O. Box 197 |
| | Southfield, MI 48037 |
| William T. Street (P25407) | (248) 357-1000 |
| Cooperating Attorney, American Civil | |
|   Liberties Union Fund of Michigan | David A. Moran (P45353) |
| 1500 E. Genesee Ave. | Cooperating Attorney, American Civil Liberties Union |
| Saginaw, MI 48607-1754 |         Fund of Michigan |
| | Wayne State University Law School |
| Michael E. Cavanaugh (P11744) | 471 W. Palmer Street |
| Fraser Trebilcock Davis & Dunlap, P.C. | Detroit, MI 48202 |
| Attorneys for Defendant Stanley A. Dinius | 313-577-4829 |
| 124 W. Allegan, Suite 1000 | |
| Lansing, MI 48933 | Margaret A. Nelson (P30342) |
| 517-482-5800 | Assistant Attorney General |
| | Public Employment, Elections & Tort Division |
| | 525 W. Ottawa |
| | P.O. Box 30212 |
| | Lansing, MI 48909 |
| | 517-373-6434 |

_____/

**DEFENDANT CITY OF MT. PLEASANT AND ISABELLA COUNTY'S**
**BRIEF IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................i

INDEX OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

STATEMENT OF FACTS............................................................................................................ 2

STANDARD OF REVIEW .......................................................................................................... 3

LAW AND ARGUMENT ............................................................................................................ 4

    THE PLAINTIFFS HAVE FAILED TO ASSERT A VIABLE CLAIM AGAINST DEFENDANTS MT. PLEASANT AND ISABELLA COUNTY  UNDER THE DOCTRINE SET FORTH IN MONELL v DEPARTMENT OF  SOCIAL SERVICES BECAUSE THE MERE ENFORCEMENT OF STATE  LAW DOES NOT GIVE RISE TO § 1983  MUNICIPAL LIABILITY..........................................................4

CONCLUSION........................................................................................................................... 12

# INDEX OF AUTHORITIES

**Statutes**

MCL § 436.1703(6) ................................................................................ 1, 2, 3, 5, 6, 7, 8, 12

**Federal Case Law**

Arrow v Federal Reserve Bank, 358 F3d 393 (6th Cir. 2004) ....................................... 3

Bethesda Lutheran Homes & Services, Inc. v Leean, 154 F3d 716 (7th Cir. 1998) ................... 11

Blackburn v Fisk University, 446 F2d 121 (6th Cir. 1971) ........................................... 6

Bockes v Fields, 999 F2d 788 (4th Cir. 1993) ........................................................ 10

Booker v GTE.net LLC, 350 F3d 515 (6th Cir. 2003)................................................... 3

City of Canton v Harris, 489 US 378 (1989) ........................................................... 8

Doby v DeCrescenzo, 171 F3d 858 (3rd Cir. 1999) ................................................... 10

Echols v Parker, 909 F2d 795, (5th Cir. 1990) ....................................................... 10

Garner v Memphis Police Department, 8 F3d 358 (6th Cir. 1993) ................................. 6

Greenberg v Life Ins. Co. of Va., 177 F3d 507 (6th Cir. 1999) ..................................... 4

Hayes v Jefferson County, 668 F2d 869 (6th Cir. 1982) ............................................. 6

Jackson v City of Columbus, 194 F3d 737 (6th Cir. 1999) .......................................... 4

Jocham v Tuscola County, 239 F Supp 2d 714 (E.D.Mich. 2003)................................... 4

Michigan Bell Telephone Co. v Strand, 26 F Supp 2d 993 (W.D.Mich. 1998) ................... 4

Monell v Department of Social Services, 436 US 658 (1978).......................... 5, 6, 9

Oklahoma City v Tuttle, 471 US 808 (1985) ......................................................... 9

Perry v American Tobacco Co., 324 F3d 845 (6th Cir. 2003) ....................................... 3

Pusey v City of Youngstown, 11 F3d 652 (6th Cir. 1994).............................................. 7

Rizzo v Goode, 423 US 362 (1976) ....................................................................... 5

Spencer v Bay City, 292 F Supp 2d 932 (E.D.Mich. 2003) ......................................... 4

Surplus Store & Exchange, Inc. v City of Delphi, 928 F2d 788 (7th Cir. 1991) ............. 8, 9, 10

Swierkiewicz v Sorema, 534 US 506 (2002) ........................................................... 4

Thompson v Duke, 1987 WL 33188 (N.D.Ill. 1988)................................................... 9

Wells v Brown, 891 F2d 591 (6th Cir. 1989)............................................................ 3

Wong v City and County of Honolulu, 333 F Supp 2d 942 (D.Haw. 2004)............................... 9

Yuhasz v Brush Wellman, Inc., 341 F3d 559 (6th Cir. 2003)....................................... 3

**Federal Court Rules**

Fed.R.Civ.P. 12(b)(6)...................................................................................2, 3, 12

## **INTRODUCTION**

This case was commenced by the Plaintiffs, Katie Anne Platte, Ashley Berden, Cullin Stewart and Samuel Maness, who were all under 21 years of age and attending parties in the Isabella County area when they were approached by various police officers and required to submit to warrantless breathalyzer tests based upon the officers' belief that they had consumed alcohol. In their Complaint Plaintiffs allege that these acts were made for the purpose of gathering evidence of a misdemeanor pursuant to a state statute, MCL § 436.1703(6) (formerly MCL § 436.1703(5)), which gives police officers in Michigan the authority to require that a minor submit to a breathalyzer test if the officer has reasonable cause to believe that the minor has consumed alcohol. The statute also provides that a minor who refuses to submit to the test is responsible for a state civil infraction and can be ordered to pay a civil fine of $100.00.

Among the various Co-Defendants, the Plaintiffs are asserting claims, pursuant to 42 USC § 1983, against the City of Mt. Pleasant and Isabella County ("Defendants") for their alleged "policy, practice and/or custom" of implementing and enforcing MCL § 436.1703(6). The other Co-Defendants include Governor Jennifer M. Granholm, the Director of the Michigan Department of State Police, Thomas Township, and the President of Central Michigan University Police Department. In terms of relief, the Plaintiffs seek a declaration that their Fourth Amendment rights were violated when they were forced to submit to a breathalyzer test although no warrant had been procured; a declaration that MCL § 436.1703(6), and the policy and practice of its enforcement by the Defendants violates the Fourth Amendment when it is applied to non-drivers like the Plaintiffs; and an order enjoining the Defendants from enforcing MCL § 436.1703(6) to the extent that it authorizes police officers to force minor non-drivers to submit to warrantless breathalyzer tests upon penalty of a civil infraction. (Compl., ¶6). In addition, the Plaintiffs seek damages for being forced to submit to a breathalyzer test in violation of their Fourth Amendment rights. (Compl., ¶6). As their first responsive pleading, the Defendants now move this Court for

1

dismissal, pursuant to Fed.R.Civ.P.12(b)(6), and submit this Brief in support of their motion.

## STATEMENT OF FACTS

From the Complaint, it would appear that the § 1983 claims against Defendants Mt. Pleasant and Isabella County relate exclusively to the enforcement of MCL § 436.1703(6) against Plaintiffs Stewart and Maness. Specifically, it is alleged that on May 3, 2003, Plaintiffs Stewart and Maness attended a party in Deerfield Township following the Mt. Pleasant High School Prom. (Compl., ¶72). The party, which was hosted and chaperoned by the parent of a Mt. Pleasant High School student, was raided by an interagency police task force known as the "Party Patrol." (Compl., ¶73). According to the Complaint, the "Party Patrol" is comprised of officers from the Mt. Pleasant Police Department, the Central Michigan University Police Department, the Isabella County Sheriff Department and the Michigan Department of State Police.

During the raid, the Plaintiffs claim that the police officers placed the students in a circle and asked them whether or not they had consumed any alcohol. (Compl., ¶74). Plaintiff Stewart stated that he had not been drinking, but was nonetheless require to submit to the breathalyzer test. (Compl., ¶75). It is alleged that the police officers did not procure a search warrant requiring Plaintiffs Stewart and Maness to take a breathalyzer test, and that they were never placed under arrest for violating any law or ordinance prior to administering the test. (Compl., ¶¶76, 77). The Plaintiffs also claim that there were no exigent circumstances that would have allowed the police officers to suspend the requirements of procuring a search warrant, and that the administration of a breathalyzer test does not fall within the scope of the "special needs" doctrine of the Fourth Amendment because the purpose of the test was to gather evidence of a misdemeanor. (Compl., ¶¶78, 79). Finally, it is alleged that Plaintiffs Stewart and Maness were not given an option to refuse the breathalyzer test because their refusal would have resulted in a civil infraction and a fine. (Compl., ¶80).

The breathalyzer test confirmed that Plaintiff Stewart had not consumed any alcohol.

2

(Compl., ¶84). However, the breathalyzer test indicated that Plaintiff Maness had consumed alcohol. (Compl., ¶85). Consequently, it is alleged that Officer Ballard from the Central Michigan University Police Department issued Plaintiff Maness a misdemeanor citation for Minor in Possession of Alcohol under MCL § 436.1703(6).

Since May of 2003, the Plaintiffs also claim that police officers from the various police agencies have required Plaintiff Maness to submit to warrantless breathalyzer tests on two other occasions. (Compl., ¶86). For example, on June 3, 2003, it is alleged that Plaintiff Maness was approached by a Mt. Pleasant police officer while walking in an apartment with a group of friends, and that everyone in the group was required to submit to a warrantless breathalyzer test. (Compl., ¶¶87, 88). Moreover, on January 29, 2004, it is alleged that Plaintiff Maness was a passenger in a car that was stopped by a Central Michigan University police officer. (Compl., ¶89). At that time, Plaintiff Maness was forcibly administered a breathalyzer test even though he was not driving and no warrant was procured. (Compl., ¶90).

## STANDARD OF REVIEW

A motion to dismiss under Fed.R.Civ.P.12(b)(6) requires the court to construe the complaint in the light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff can prove facts to support a claim that would warrant relief. Arrow v Federal Reserve Bank, 358 F3d 392, 393 (6th Cir. 2004); Yuhasz v Brush Wellman, Inc., 341 F3d 559, 562 (6th Cir. 2003). While this standard of review is decidedly liberal, it requires more than the bare assertion of legal conclusions. Perry v American Tobacco Co., 324 F3d 845, 848 (6th Cir. 2003). The reviewing court is not required to conjure up unpleaded allegations. Wells v Brown, 891 F2d 591, 594 (6th Cir. 1989). Moreover, the court need not accept as true, legal conclusions or unwarranted factual inferences. See Booker v GTE.net LLC, 350 F3d 515, 517 (6th Cir. 2003). Although matters outside the pleadings generally may not be considered on a motion under Fed.R.Civ.P. 12(b)(6), the court may consider public records, matters of which a court may take

3

judicial notice, and letter decisions of governmental agencies. Jackson v City of Columbus, 194 F3d 737, 745 (6th Cir. 1999), *abrogated on other grounds*, Swierkiewicz v Sorema, 534 US 506, 122 S Ct 992, 152 L Ed 2d 1 (2002). Moreover, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if referred to in the complaint and central to the plaintiff's complaint. Greenberg v Life Ins. Co. of Va., 177 F3d 507, 514 (6th Cir. 1999); Jocham v Tuscola County, 239 F Supp 2d 714, 723 (E.D.Mich. 2003). The court may also take judicial notice of facts that are indisputable because they are capable of ready determination from resources whose accuracy cannot be reasonably questioned. Michigan Bell Telephone Co. v Strand, 26 F Supp 2d 993, 996 (W.D.Mich. 1998).

## LAW AND ARGUMENT

**THE PLAINTIFFS HAVE FAILED TO ASSERT A VIABLE CLAIM AGAINST DEFENDANTS MT. PLEASANT AND ISABELLA COUNTY UNDER THE DOCTRINE SET FORTH IN MONELL v DEPARTMENT OF SOCIAL SERVICES BECAUSE THE MERE ENFORCEMENT OF STATE LAW DOES NOT GIVE RISE TO § 1983 MUNICIPAL LIABILITY.**

In support of their claim that MCL § 436.1703(6) is unconstitutional under the Fourth Amendment, the Plaintiffs will presumably rely upon the case of Spencer v Bay City, 292 F Supp 2d 932 (E.D.Mich. 2003). In Spencer, this Court considered the constitutionality of a City of Bay City ordinance which allowed police officers, upon reasonable suspicion, to demand that a person who has not reached 21 years of age take a breath test, without first having obtained a search warrant. Although the Bay City ordinance was patterned after a former version of MCL § 436.1703(6), the parties agreed that the police officer demanded that the plaintiff submit to the breathalyzer test under the authority of the local ordinance. Thus, the state statute was not challenged by the plaintiff in that case. On cross-motions for summary judgment, this Court ruled that the "special needs" exception to the search warrant requirement of the Fourth Amendment did not apply. Id. at 942. Furthermore, this Court determined that the "exigent circumstances" exception did not serve to establish an automatic exemption from the warrant requirement, and that such circumstances

had not been demonstrated on the record of that case which would have excused the police officers from obtaining a warrant. Id. at 947. Accordingly, this Court concluded that the Bay City ordinance was unconstitutional to the extent that it authorized warrantless searches in all cases, and as applied to the plaintiff.

Under the presumption that the similarly-worded MCL § 436.1703(6) is also unconstitutional, the Plaintiffs in this case allege that "[p]olice officers, acting under the supervision and direction of defendants, as authorized by state law, did not procure a search warrant before conducting the searches" involving the Plaintiffs. (Compl., ¶100). Thus, the Plaintiffs claim that the "Defendants violated the Fourth Amendment by implementing and enforcing [MCL § 436.1703(6)], a law that penalized individuals for exercising their constitutional right to refuse to consent to warrantless searches." (Compl., ¶107).

The starting point for reviewing the liability of a governmental agency under § 1983 is the Supreme Court's decision in Monell v Department of Social Services, 436 US 658, 98 S Ct 2018, 56 L Ed 2d 611 (1978). In Monell, the Court held that local government units may not be held liable under § 1983 on a *respondeat superior* theory. Rather, the entity may only be held liable when "action pursuant to official municipal policy of some nature causes a constitutional tort." Id. 436 US at 691. In this regard, the Court summarized its holding as follows:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Id. at 694. The Monell Court also emphasized that the alleged unconstitutional policy or custom must have truly "caused" the injury or been the "moving force" behind the unconstitutional behavior. Id. On this matter, the Court cited Rizzo v Goode, 423 US 362, 371, 96 S Ct 598, 46 L Ed 2d 561 (1976), which established the requirement that there must be "an affirmative link between the occurrence of the various incidents of police misconduct and the adoption of a plan or

policy . . . showing their authorization or approval of such misconduct." Id.

Under Monell, the federal courts have consistently dismissed § 1983 actions against governmental agencies when the plaintiff is unable to show that supervisory personnel — meaning the "lawmakers" or those whose edicts or acts may fairly be said to represent official policy — "authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Hayes v Jefferson County, 668 F2d 869, 872-74 (6th Cir. 1982); Bellamy v Bradley, 729 F2d 416, 418 (6th Cir. 1984). In Garner v Memphis Police Department, 8 F3d 358, 364 (6th Cir. 1993), for example, the Sixth Circuit held that to satisfy the Monell requirements, a plaintiff must "identify the policy, connect the policy to the [municipality] itself, and show that the particular injury was incurred because of the execution of that policy." Furthermore, it is well established that conclusory allegations unsupported by facts are insufficient to state a claim of action under § 1983. See Blackburn v Fisk University, 446 F2d 121 (6th Cir. 1971).

In this case, the Plaintiffs claim that the Defendants acted pursuant to MCL § 436.1703(6) deprive Plaintiffs of their Fourth Amendment right to be free from unreasonable searches. (Compl., ¶1). With regard to the offending "policy, practice and/or custom," the Plaintiffs allege the following:

> 91. It is the policy, practice and/or custom of each of the defendants to require that a non-driving individual under the age of twenty-one submit to a breathalyzer test when an officer, under the direction and supervision of defendants, has reasonable cause to believe that he or she has been drinking alcohol.
>
> 92. It is the policy, practice and/or custom of officers, under the direction and supervision of defendants, to administer these breathalyzer tests, pursuant to Mich. Comp. Laws § 436.1703(6) without first seeking a search warrant -- the results of which may be used in a prosecution for the crime of minor in possession of alcohol.
>
> 93. It is the policy, practice and/or custom of officers, under the direction and supervision of defendants, to require minor individuals like plaintiffs to submit to breathalyzer tests, without first procuring a warrant, when they are at a party,

> leaving a party, walking down the street together at night or driving together at night.
>
> * * * * * *
>
> 106.   It is the policy, practice and/or custom of defendants to require that non-driving individuals under the age of twenty-one submit to breathalyzer tests when they have reasonable cause to believe they have been drinking alcohol, even though no search warrant has been procured, there has been no valid arrest, and no exigent circumstances or "special needs" exist that would suspend the requirement of procuring a search warrant.

(Compl., ¶¶91-93, 106).  In asserting these allegations, however, the Plaintiffs have not alleged anything in the nature of a "policy, practice and/or custom" by which the Defendants allow their police officers to take action beyond that which is permitted by the state statute itself.  As a matter of fact, with regard to the components of the Defendants' alleged policy, practice and/or custom, the Plaintiffs assert that MCL § 436.1703(6) "does not require that a police officer obtain a warrant before requiring a non-driving minor to take a breathalyzer test; it allows a police officer to perform warrantless breathalyzer tests on minors for the purpose of obtaining evidence to be used to convict a minor under [MCL § 436.1703(6)], a misdemeanor that imposes no jail for a first offense." (Compl., ¶20).

Under these circumstances, it is clear that the alleged "policy, practice and/or custom" at issue in this case amounts to nothing more than the Defendants' enforcement of MCL § 436.1703(6), which the Plaintiffs are simultaneously challenging as being unconstitutional under the requirements of the Fourth Amendment.  However, the Sixth Circuit has stated that "state criminal laws . . . represent the policy of the state.  Thus, a city official pursues her duties as a state agent when enforcing state law or policy."  Pusey v City of Youngstown, 11 F3d 652, 657 (6th Cir. 1994).  Even construing the allegations in the light most favorable to the non-moving party, the Plaintiffs have not traced the alleged constitutional deprivation to a "policy, practice and/or custom" of the Defendants themselves.  In other words, to that extent that the act of administering a warrantless

7

breathalyzer test to a non-driving minor under the circumstances described by the Plaintiffs constitutes an "official policy," it is the policy of the state of Michigan, rather than anything devised or adopted by the Defendants, that is responsible for the injury.  Accordingly, this Court should dismiss the claims against the Defendants on the grounds that the mere enforcement of state law does not give rise to § 1983 municipal liability.

This conclusion is supported by the holdings of several federal courts.  In Surplus Store & Exchange, Inc. v City of Delphi, 928 F2d 788 (7th Cir. 1991), for example, the Seventh Circuit considered a § 1983 action alleging violations of the Fourth and Fourteenth Amendments, based upon a police officer's seizure of two gold rings, believed to be stolen, and the release of the rings to their purported owner without a judicial hearing.  Since the defendant city, as the police officer's employer, was the sole defendant being sued by the plaintiff, the court stated, "'[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'"  Id. at 790 (quoting City of Canton v Harris, 489 US 378, 385, 109 S Ct 1197, 103 L Ed 2d 412 (1989)).

On that question, the court observed that the plaintiff's complaint not only failed to point to a specific city policy or custom directly and causally linked to the alleged deprivation, but failed altogether to refer to any sort of policy or custom linked in any way to the alleged deprivation.  Id.  Nevertheless, the plaintiff maintained that it satisfied the municipal policy requirement by citing three particular Indiana statutes that authorized the police officer to seize and dispose of the rings.  Specifically, the plaintiff argued that the state statutes were unconstitutional because they failed to require a pre-disposition hearing.  Id. at 791.  However, the Surplus court found that the plaintiff could not make the "conceptual leap" from those statutes to the imposition of § 1983 municipal liability by arguing that the defendant's decision to enforce those unconstitutional statutes was a "municipal policy" that "caused" the wrongful deprivation of his rights.  Id.  In this regard, the court

8

rejected the plaintiff's argument that "all cities can be charged with 'adopting' as a matter of policy all state laws that they do not ignore," stating:

> This argument would render meaningless the entire body of precedent from the Supreme Court and this court that requires culpability on the part of a municipality and/or its policymakers before the municipality can be held liable under § 1983, and would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors-here, the Indiana legislature.

Id. at 791, fn. 4.

In addition, the Surplus court stated that the plaintiff's argument was fatally flawed in light of what had not been alleged. In particular, the plaintiff was not claiming that the alleged constitutional violation was caused by a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the defendant that was itself unconstitutional. Nor was the plaintiff claiming that the defendant, as a matter of policy or custom, enforced the law in a manner or method that caused the constitutional violation so as to place the claim in the "inadequate training" or "inadequate supervision" line of cases. Rather, the plaintiff was simply arguing that the defendant could be held liable for the deprivation of its property because of its "policy" of allowing or instructing its police officers to enforce the challenged statutes. In rejecting that argument, however, the court stated:

> It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the "policy" of enforcing state law. If the language and standards from Monell are not to become a dead letter, such a "policy" simply cannot be sufficient to ground liability against a municipality.

Id. at 791-92 (citing Oklahoma City v Tuttle, 471 US 808, 823, 105 S Ct 2427, 85 L Ed 2d 791 (1985), and Thompson v Duke, 1987 WL 33188 (N.D.Ill. 1988)).

Similarly, in Wong v City and County of Honolulu, 333 F Supp 2d 942 (D.Haw. 2004), the plaintiff brought a § 1983 civil rights action against the municipal defendant and a police officer following the removal and destruction of a motorcycles parked in the area around his repair shop.

9

Specifically, the plaintiff alleged a violation of his constitutional rights based upon the defendant's enforcement of state statutes allowing for the immediate disposition of derelict vehicles. After granting a petition for leave to file an amicus brief by the State of Hawaii Attorney General, the court ruled that the challenged statutes were unconstitutional because they did not provide for notice or an opportunity to be heard. Id. at 949-50. However, the court granted summary judgment as to the plaintiff's remaining federal law claims against the municipal defendant because there was no basis for imposing liability under § 1983. In doing so, the court rejected the plaintiff's argument that the municipal defendant was subject to liability under § 1983 on the grounds that its ordinance implemented the unconstitutional statutes, and thus constituted an official policy statement by the municipal defendant. Relying upon Surplus, supra, the court stated that "mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability." With regard to ordinance, the court reasoned:

> [The Ordinance] provides, in relevant part, simply that "[i]t shall be the duty of the officers of the police department or such officers as are assigned by the chief of police to enforce the provisions of [the City and County of Honolulu] traffic code and all of the state vehicle laws applicable to street traffic in the City and County of Honolulu." The Ordinance merely reflects a declaration of policy by the City and County to enforce state law (and thus the policy of the state government), which bears only a severely attenuated causal connection to the asserted violations of Plaintiff's federal rights. (citations omitted). It does not constitute an express incorporation and adoption of state law and policy. (citation omitted).

Id. at 791. See also Bockes v Fields, 999 F2d 788, 791 (4th Cir. 1993)(ruling that "state-conferred discretion is not the 'policymaking authority' for which county may be held responsible under § 1983" where county board terminated plaintiff pursuant to policy established by State Board); Echols v Parker, 909 F2d 795, 799-801 (5th Cir. 1990)(affirming district court assessment of § 1988 attorney fees against state alone because county officials attempting to enforce unconstitutional state anti-boycotting statute were "acting as a state official."); Doby v DeCrescenzo, 171 F3d 858, 868 (3rd Cir. 1999)("when a county is merely enforcing state law, without adopting any particular

10

policy of its own, it cannot be held liable").

Once again, even when construing the allegations in the light most favorable to the non-moving party, the Plaintiffs have not traced the alleged constitutional deprivation to a "policy, practice and/or custom" of the Defendants themselves. Rather, the alleged "policy, practice and/or custom" at issue in this case amounts to nothing more than the Defendants' enforcement of MCL § 436.1703(6). To that extent that the act of administering a warrantless breathalyzer test to a non-driving minor under the circumstances described by the Plaintiffs constitutes an "official policy," it is the policy of the state of Michigan, and not a policy of the Defendants. "When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury." Bethesda Lutheran Homes & Services, Inc. v Leean, 154 F3d 716, 718 (7th Cir. 1998). Under the circumstances of this case, therefore, this Court should dismiss the claims against the Defendants on the grounds that the mere enforcement of state law does not give rise to § 1983 municipal liability.

## **CONCLUSION**

For the reasons set forth in this Brief, the Defendants respectfully request that this Court grant their Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), and award them reasonable costs and attorney fees wrongfully incurred.

                     Respectfully submitted,

                     JOHNSON, ROSATI, LaBARGE,
                     ASELTYNE & FIELD, P.C.

                     By:   /s/ Jason D. Kolkema (P55936)
                            Patrick A. Aseltyne (P23293)
                            Jason D. Kolkema (P55936)
                            Attorneys for City of Mt. Pleasant and Isabella County, only
                            303 S. Waverly Rd.
                            Lansing, MI 48917
                            (517)886-3800

Dated: September 12, 2005