UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATIE ANNE PLATTE, ASHLEY BERDEN,
CULLIN STEWART, and SAMUEL
PAUL MANESS,

                Plaintiffs,

                                        Case Number 05-10200
v.                                      Honorable David M. Lawson

THOMAS TOWNSHIP, a Municipal Corporation;
CITY OF MOUNT PLEASANT, a Municipal
Corporation; STANLEY A. DINUS, in his official
capacity as Director 1 Chief of Police of the
Central Michigan University Police Department;
ISABELLA COUNTY, a Municipal Corporation;
JENNIFER M. GRANHOLM, in her official
capacity as Governor of the State of Michigan;
COLONEL PETER MUNOZ, in his official
capacity as Director of the Michigan Department
of State Police,

                Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT,
DENYING THE STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
DENYING THE MOTION FOR SUMMARY JUDGMENT BY DEFENDANT
THOMAS TOWNSHIP, AND SCHEDULING STATUS CONFERENCE**

        This matter is before the Court on three motions filed by the parties: (1) defendant Thomas

Township's motion for summary judgment or dismissal; (2) defendants Colonel Tardarial

Sturdivant's (who has been succeeded as a party by Colonel Peter Munoz) and Governor

Granholm's (the state defendants) motion for summary judgment or dismissal; and (3) the plaintiffs'

motion for partial summary judgment. The plaintiffs' complaint asserts a claim under 42 U.S.C. §

1983 that raises issues previously addressed by the Court in *Spencer v. City of Bay City*, 292 F.

Supp. 2d 932 (E.D. Mich. 2003), in which the Court held that a municipal ordinance substantially similar to the state statute challenged in this case, Michigan Compiled Laws § 436.1703(6), is unconstitutional insofar as it authorized police officers to compel minors to submit to breath tests for alcohol in the absence of a warrant or circumstances excusing the requirement of a search warrant. The plaintiffs argue in their motion that they are entitled to a judgment as a matter of law declaring that the statute is unconstitutional and their Fourth Amendment rights were violated when police officers forced them to submit to breath tests, although they concede that an award of damages must await a trial. They also seek an injunction against future enforcement of the statute. The municipal defendant argues that it is entitled to dismissal or summary judgment because the undisputed facts show that exigent circumstances permitted the warrantless breath tests conducted pursuant to section 436.1703(6). The state defendants contend that they are not responsible for the actions of the local police departments in this case. They also argue that the statute is constitutional on its face because warrantless searches pursuant thereto can be justified on the basis of exigent circumstances and special needs.

The Court heard the parties' oral arguments at a hearing held on September 27, 2006. The parties submitted material outside the pleadings in support of their respective positions, so the motions will be treated under Federal Rule of Civil Procedure 56 instead of Rule 12. The Court finds that Michigan Compiled Laws § 436.1703(6), under which the police officers were operating in this case, is unconstitutional on its face because it purports to authorize searches and seizures without a warrant and absent exigent circumstances; therefore it sanctions official conduct that violates the Fourth Amendment. However, it does not necessarily follow that the plaintiffs' constitutional rights under the Fourth Amendment were violated as a matter of law when they were

forced to submit to breath tests because fact questions remain whether exigent circumstances existed *in this case* that excused the police officers' obligation to obtain a warrant. The Court also finds that there is sufficient evidence in this record to establish the involvement of the state defendants in the events about which the plaintiffs complain. Therefore, the Court will grant in part the plaintiffs' motion for summary judgment, declare Michigan Compiled Laws § 436.1703(6) unconstitutional as repugnant to the Fourth Amendment, and enjoin further enforcement; deny the plaintiffs' motion in all other respects; deny the motion for summary judgment by defendant Thomas Township; and deny the motion for summary judgment by the state defendants.

I.

In their amended complaint, the plaintiffs allege that they were all under the age of twenty-one years, they attended parties that were broken up by police, and the police acting on the authority of Michigan Compiled Law § 436.1703(6) forced them to submit to warrantless breath tests to detect alcohol. According to the declarations and depositions filed with the motion papers, Katie Anne Platte was a nineteen-year-old college student who went to a small party at the house of a high school classmate on July 23, 2004. She did not consume any alcohol at the gathering. Thomas Township police officers arrived at the party and demanded to be let inside the house. However, Joe Latty, a resident of the home, told the officers they could not enter without a warrant. After waiting outside for an hour and a half, "an attorney . . . , who is a friend of [Platte's] family and a friend of Joe Latty's family, came over to the house and negotiated with the police." Pls.' Mot. for Summ. J., Ex. A, Dec. of Platte at ¶ 12. When the plaintiff and her friends eventually came out of the home, "the police did not allow [them] to leave." *Id.* at ¶ 13. Instead, Platte and her friends "were forced to wait 10 to 15 minutes until a police officer returned with breathalyzer machines,"

and "were told that if [they] refused to take the test [they] would be violating the law." *Id.* at ¶¶ 14, 16. Platte was then "forced to take a breath[alyzer] test," even though she "was not under arrest for any [] crime." *Id.* at ¶ 17. Platte "was not shown a warrant for a breath[alyzer] test," *ibid.*, and according to the plaintiffs, "[t]here were no exigent circumstances that would have allowed the officers to suspend the requirements of procuring a search warrant." Amend. Compl. at ¶ 34. The test revealed that Platte had a .00% blood-alcohol level. The police therefore allowed her to leave. As a result of these events, Platte no longer attends parties of young adults in Thomas Township at night—for fear of being forced again to take a breathalyzer test even if she has abstained from drinking alcohol.

Plaintiff Ashley Berden alleges that she was under twenty years old when she attended the same party as Platte. Like Platte, Berden also went inside the house when the police officers arrived on the scene, and she was detained by the police when she exited. Plaintiff Berden asked one of the officers if she could retrieve her personal effects from inside the home, but upon discovering her identity, the officer "said that he didn't like [her] and placed [her] in the back of the police vehicle." Pls.' Mot. for Summ. J., Ex. B, Dec. of Berden at ¶ 10. After being confined there for fifteen to thirty minutes, another officer, Officer Ross, came into the cruiser and "told [her she] had to take a breathalyzer test." *Id.* at ¶¶ 11-12. "Officer Ross told [her] that if [she] refused to take the test, [she] would be violating the law." *Id.* at ¶ 13. He also told her that "if [she] refused to take a breath[alyzer] test [she] would go to jail." *Id.* at ¶ 15. The police did not have a warrant, Berden was not under arrest, and, according to the plaintiffs, "[t]here were no exigent circumstances that would have allowed the officers to suspend the requirements of procuring a search warrant."

Amend. Compl. at ¶ 56.  *See also* Dec. of Berden at ¶ 14.  Berden's test indicated that she had a .00% blood-alcohol level, and she was permitted to leave.

Apparently this "was not the first time that [Berden has been] forced to give a breathalyzer test even though the police did not have a search warrant, even though [she] was not driving and even though [she] was not [drinking alcohol]."  *Id.* at ¶ 21.  Berden alleges that on June 7, 2003, she attended a high-school graduation party at a friend's house, but left her purse at the gathering when she departed.  She contends that later, "Thomas Township and/or Saginaw County police officers broke up the party and found [her] purse."  *Id.* at ¶ 24.  These officers then came to Berden's residence "at 4:00 a.m., woke up [her] family and demanded that [she] take a breath[alyzer] test."  *Id.* at ¶ 25.  The officers did not have a warrant and they told her that she would be breaking the law if she refused to take the test.  She took the test; it again indicated that she had a .00% blood-alcohol level.  Based upon these and other incidents, plaintiff Berden fears additional forced breath tests, although she continues to attend parties with her friends in Thomas Township and Saginaw County on a regular basis.

Finally, plaintiffs Cullin Stewart and Samuel Maness allege that they were eighteen and seventeen years old, respectively, on May 3, 2003 when they attended a post-prom party in Deerfield Township, Isabella County.  The party was raided by an interagency police task force that refers to itself as the "Party Patrol," which is comprised of officers from the Mount Pleasant Police Department, the Central Michigan University Police Department, the Isabella County Sheriff's Department, and the Michigan State Police Department.  Pls.' Mot. for Summ. J., Ex. C, Dec. of Stewart at ¶ 12.  Officers from the "Party Patrol" grabbed a number of students, including the plaintiffs Stewart and Maness, and forced them to the ground.  Upon questioning, Stewart stated

truthfully that he had not been drinking, but was nonetheless required to submit to a breathalyzer test. The officers did not have a warrant, the plaintiffs were not under arrest, and according to the plaintiffs, "[t]here were no exigent circumstances that would have allowed the officers to suspend the requirements of procuring a search warrant." Amend. Compl. at ¶ 79. *See also* Dec. of Stewart at ¶ 10. In addition, the officers administered the breathalyzer tests to Stewart and Maness under threat of civil infraction and fine. The two were detained for roughly ninety minutes. Although the breathalyzer test revealed that plaintiff Stewart had not imbibed any alcohol, the test of Maness indicated that he had. The police therefore issued Maness a ticket for Minor in Possession of Alcohol (MIP), a misdemeanor offense pursuant to Michigan Complied Laws § 436.1703(1)(b).

Since this event, police officers from the defendant police agencies have required Maness to submit to a breathalyzer test on two other occasions. The first occurred on June 2, 2003, while Maness was walking home with some friends from a Mount Pleasant apartment complex. Everyone in the group was required to submit to a breathalyzer test even though they were not driving and the officers had not obtained a search warrant. The second incident took place on January 29, 2004, while Maness "was a passenger in a car that was stopped by Central Michigan University police officers." Pls.' Mot. for Summ. J., Ex. D, Dec. of Maness at ¶ 15. Even though he was not driving, there was no warrant, and he was not placed under arrest for any specific crime, Maness "was required, like the four other passengers, to submit to a breathalyzer test." *Id.* at ¶ 16. Despite these encounters, Maness continues "to spend time with friends in Mount Pleasant, attend parties at night, walk down the street at night, and drive in cars with friends at night." Amend. Compl. at ¶ 95. On the other hand, Stewart has "often stayed home instead of socializing with friends at parties or in

public because [he] feared that [he and his] friends . . . would be forced to submit to warrantless breathalyzer tests." Dec. of Stewart at ¶ 16.

As a general proposition, the plaintiffs allege the following:

It is the policy, practice and/or custom of each of the defendants to require that a non-driving individual under the age of twenty-one submit to a breathalyzer test when an officer, under the direction and supervision of defendants, has reasonable cause to believe that he or she has been drinking alcohol.

It is the policy, practice and/or custom of officers, under the direction and supervision of defendants, to administer these breathalyzer tests, pursuant to Mich. Comp. Laws § 436.1703(6) without first seeking a search warrant – the results of which may be used in a prosecution for the crime of minor in possession of alcohol.

It is the policy, practice and/or custom of officers, under the direction and supervision of defendants, to require minor individuals like plaintiffs to submit to breathalyzer tests, without first procuring a warrant, when they are at a party, leaving a party, walking down the street together at night or driving together at night.

Amend. Compl. at ¶¶ 92-94. *See also id.* at ¶¶ 38-40, 70-72. The plaintiffs contend that the policies of the local police agencies and the conduct of the officers on the particular nights in question violated their Fourth Amendment rights. They believe that they are entitled to a judgement as a matter of law on the question of liability.

The Court has entered consent judgments as to defendants Saginaw County, Stanley Dinius, Chief of Police of the Central Michigan University Police Department, Isabella County, and the City of Mount Pleasant. Defendant Thomas Township filed its motion for dismissal or summary judgment, followed by a similar motion filed by defendants Governor Granholm and Colonel Munoz and the plaintiffs' motion for partial summary judgment. The matters have been under advisement following oral argument and are now ready for decision.

## II.

The defendants motions are styled as motions for dismissal under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, summary judgment pursuant to Rule 56(c). Although a party may file a motion for summary judgment that is contingent upon the court's denial of its motion for dismissal, if matters outside the pleadings are submitted, the motion more properly should be considered under Rule 56, and courts will treat the motion as one for summary judgment. Fed. R. Civ. P. 12(b) (stating that "if, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"); *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002) (quoting *Soper v. Hoben*, 195 F.3d 845, 850 (6th Cir. 1999)). The defendants have filed a number of exhibits with their motions. These documents plainly are relevant to the defendants' motions and should be examined by the Court. Therefore, the Court will treat the motions as ones for summary judgment and apply the standards required by Rule 56.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The parties have filed cross motions for summary judgment, which might imply that there are no facts in dispute. Nonetheless, the Court must apply the well-recognized standards when deciding such cross motions; "[t]he fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate." *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003). Therefore, when this Court considers cross motions for summary judgment, it "must evaluate

each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

A motion for summary judgment under Fed. R. Civ. P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The various motions by the parties raise slightly different issues, but they all focus on the Michigan statute that authorizes police officers under certain conditions to demand that a minor submit to a breath test for alcohol upon pain of a civil fine. The statute states:

> A peace officer who has reasonable cause to believe a minor has consumed alcoholic liquor or has any bodily alcohol content may require the person to submit to a preliminary chemical breath analysis. A peace officer may arrest a person based in whole or in part upon the results of a preliminary chemical breath analysis. The results of a preliminary chemical breath analysis or other acceptable blood alcohol test are admissible in a criminal prosecution to determine whether the minor has consumed or possessed alcoholic liquor or had any bodily alcohol content. A minor who refuses to submit to a preliminary chemical breath test analysis as required in this subsection is responsible for a state civil infraction and may be ordered to pay a civil fine of not more than $100.00.

Mich. Comp. Laws § 436.1703(6). The provisions of this section supplement those in section 436.1703(1), which sets forth the basic minor in possession offense. Section 436.1703(1) states:

> A minor shall not purchase or attempt to purchase alcoholic liquor, consume or attempt to consume alcoholic liquor, possess or attempt to possess alcoholic liquor,

or have any bodily alcohol content, except as provided in this section. A minor who violates this subsection is guilty of a misdemeanor.

Mich. Comp. Laws § 436.1703(1).

### A. The state defendants' motion

Defendants Munoz and Governor Granholm argue that Michigan Compiled Laws § 436.1703(1) must be found constitutional against the facial challenge brought by the plaintiffs because there are circumstances under which compelled breath tests authorized by the Act would be valid, citing *United States v. Salerno*, 481 U.S. 739, 745 (1987). Those circumstances, according to these defendants, arise when the alternatives to taking breath samples at the scene are more cumbersome and burdensome on law enforcement and the subjects themselves, rendering administration of preliminary breath tests (PBTs) "reasonable" within the meaning of the Fourth Amendment. The state defendants also argue that administration of warrantless PBTs is reasonable when the time it would take to secure a warrant would lead to the dissipation of evidence – that is, the alcohol in the subject's blood would metabolize so as to become undetectable. These defendants therefore invoke the special needs and exigent circumstances exceptions to the Fourth Amendment's warrant requirement as justification for the authorization in section 436.1703(6) for police officers to "require the person to submit to a preliminary chemical breath analysis."

The state defendants also contend that they are improperly named as defendants because they have no vicarious liability for the conduct of the local police, and they have no supervisory authority over the police practices and methods by the local police defendants' in their enforcement of the State's drinking laws pertaining to minors. They explain that the Michigan State Police Office of Highway Safety Planning (OHSP) is the local agency that administers the United States Department of Justice's Enforcing Underage Drinking Laws block grant; but although the funds are used by local

police agencies to pay for underage drinking enforcement activities such as "party patrols," education programs, undercover operations, and equipment, participation in the grant program is voluntary and no specific police methods or practices are required by the grant program or grant agreement. They point out that decisions as to which police methods and practices to employ are left up to each police agency and individual police officer, and the state police has no supervisory authority over the alcohol enforcement activities of the local and county police agencies. Similarly, they say that the Governor's Traffic Safety Advisory Commission has no involvement with this program.

1.

Turning to the first argument, the defendants do not dispute that the Fourth Amendment is implicated by section 436.1703(6). As this Court explained in *Spencer v. City of Bay City*, 292 F. Supp. 2d. 932 (E.D. Mich. 2003),

> It is well established that the taking of a breath sample to test for the presence of alcohol constitutes a search under the Fourth Amendment. *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616-617 (1989) (holding that "[s]ubjecting a person to a breathalyzer test, which generally requires the production of alveolar or 'deep lung' breath for chemical analysis, implicates similar concerns about bodily integrity and . . . should . . . be deemed a search") (citations omitted). As such, the search must be reasonable. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."); *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995) (observing that "[a]s the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is 'reasonableness'").

*Id.* at 939.

The plaintiffs contend that the statute is unconstitutional on its face because it is repugnant to the Fourth Amendment. However, "[w]hen the constitutionality of a statute is challenged, th[e court] first ascertains whether the statute can be reasonably construed to avoid the constitutional

difficulty." *Ellis v. Brotherhood of Ry.*, 466 U.S. 435, 444 (1984). Consequently, "if 'a construction of the statute is fairly possible by which [a serious doubt of constitutionality] may be avoided,' a court should adopt that construction." *Califano v. Yamasaki*, 442 U.S. 682, 693 (1979) (internal citation omitted) (alteration in original). Therefore, if the plain language of section 436.1703(6) authorizes searches that violate the Fourth Amendment, it must be found unconstitutional on its face. On the other hand, if the statute can be construed reasonably to permit PBTs only when police have obtained a warrant or when an exception to the warrant requirement applies, the statute is constitutional.

The state defendants pose this argument in a slightly different form by referring to *United States v. Salerno*, where the Supreme Court observed that "[a] facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." 481 U.S. at 745. *Salerno* involved a facial challenge to the Bail Reform Act's pretrial detention provisions as violative of "substantive due process." *Id.* at 746.

The Court in *Salerno* refused to apply the overbreadth doctrine to the respondents' due process challenge to the statute, since that doctrine traditionally is limited to First Amendment challenges. The Sixth Circuit adheres to that limitation. For instance, in *Rosen v. Goetz*, 410 F.3d 919 (6th Cir. 2005) (per curiam), the court rejected a facial challenge on due process grounds to a Tennessee law that prescribed a procedures for disenrolling Medicaid beneficiaries; and in *Coleman v. DeWitt*, 282 F.3d 908 (6th Cir. 2002), the court turned back an attack on a criminal conviction for involuntarily terminating a pregnancy on the basis of substantive due process because "the

challenging party [could not] demonstrate that there is no constitutional application of the statute." *Id.* at 914 (citing *Salerno*, 481 U.S. at 745-46).

However, as the plaintiffs point out, in *Chandler v. Miller*, 520 U.S. 305 (1997), the Supreme Court sustained a facial challenge on Fourth Amendment grounds to a state statute that required candidates for elective office to submit to drug testing, holding that the state's interest in drug-free officials was not a special need that rendered the intrusion reasonable. Literally applied, it appears that the Georgia statute would have survived if *Salerno* were applied because there were likely some circumstances under which the statute's dictates would have been constitutional, such as when the statute's drug test requirements were applied to a candidate with a demonstrated drug problem. More recently, the Sixth Circuit entertained and upheld a facial challenge to a federal law (the Stored Communications Act) that allowed government officials to procure e-mail messages surreptitiously from Internet service providers (ISPs) upon a showing that the contents were relevant to an on-going criminal investigation. *Warshak v. United States*, 490 F.3d 455 (6th Cir. 2007). In considering the *obiter dictum* in *Salerno* that a facial challenger's burden includes showing "no set of circumstances" in which the challenged statute could be applied in a constitutional way, the court had this to say:

> The fact that there are exceptions to *Salerno* and that members of the Supreme Court have quibbled in the public record about its ongoing validity does not demonstrate its invalidity as a general principle pertaining to facial challenges. A more convincing argument about why *Salerno* does not apply in the Fourth Amendment context is the Supreme Court's decision in *Berger* [*v. New York*, 388 U.S. 41 (1967)], a case that is particularly analogous to this one. In *Berger*, the Court facially invalidated a New York statute that provided for court ordered wiretaps of telephone conversations on a showing of less than probable cause. 388 U.S. at 54. The Court explicitly stated that by allowing such a procedure, the statute violated the Warrant Clause by endorsing searches without a showing of probable cause. "The purpose of the probable-cause requirement of the Fourth Amendment, to keep the state out of constitutionally protected areas until it has reason to believe that a specific crime

has been or is being committed, is thereby wholly aborted." *Id.* at 59. The Court acknowledged that it had "in the past, under specific conditions and circumstances, sustained the use of eavesdropping devices." *Id.* at 63. Under the government's present *Salerno* argument, this fact would have precluded facial invalidation of the statute in *Berger* as well. Yet the prospect of a constitutional application of the statute, either where a court order was supported by probable cause, or where the participants in the conversation lacked a reasonable expectation of privacy, did not prevent facial invalidation of *Berger*.

> Under Berger, *facial invalidation is justified where the statute, on its face, endorses procedures to authorize a search that clearly do not comport with the Fourth Amendment.*

*Id.* at 477 (emphasis added).

The lesson, then, under both *Califano v. Yamasaki* and *Warshak v. United States*, is that the text and context of the statute must be examined to determine if it can be construed in such a way that an unconstitutional interpretation can be avoided, or, on the other hand, whether the statute's plain language authorizes unconstitutional conduct on the part of the government.

Section 436.1703(6) authorizes police officers "who [have] reasonable cause to believe a minor has consumed alcoholic liquor or has any bodily alcohol content [to] require the person to submit to a preliminary chemical breath analysis." Mich. Comp. Laws § 436.1703(6). The statute plainly does not require the police officer to obtain a warrant before taking a breath sample from a minor, which the parties acknowledge would be a search within the meaning of the Fourth Amendment. There is no dispute that there is a preference expressed in the Fourth Amendment that searches, to be reasonable, be sanctioned by the issuance of a warrant by a neutral and detached judicial officer. *See Johnson v. United States*, 333 U.S. 10, 14 (1948). Nor does the statute require that any of the recognized exceptions to the warrant requirement exist before the police officer compels a minor to submit to a breath test. The state defendants point out that a warrantless search can pass constitutional muster if exigent circumstances exist, that is, "situations where real

immediate and serious consequences will certainly occur if a police officer postpones action to obtain a warrant." *United States v. Williams*, 342 F.3d 430, 436 (6th Cir. 2003) (internal quotations omitted); *see also Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003). Exigent circumstances exist when there is a danger of "imminent destruction of evidence [or a] risk of danger to the police or others." *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994) (internal citations omitted); *see also Minnesota v. Olson*, 495 U.S. 91, 100 (1990). They argue that if breath samples are demanded under circumstances when evidence of the minor's blood alcohol content would dissipate during the time it would take to procure a search warrant, seizing the sample would not be unconstitutional. Certainly that is true, but if such circumstances exist, the police officer does not need the authority of the statute to take the breath sample. Therefore, to say that there are some circumstances under which breath samples can be taken from minors in a constitutional way does little to answer the question whether the statute itself is constitutional, when the statute allows searches and seizures absent the condition of a warrant or an excuse for proceeding without one.

The Supreme Court has held that some searches can be reasonable absent both a warrant and exigent circumstances, specifically "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in judgment)). This Court discussed at length the origin and development of the "special needs" exception to the Fourth Amendment's warrant requirement in *Spencer v. City of Bay City* with respect to a part of a local ordinance that reads identically to section 436.1703(6); that discussion need not be repeated here. *See* 292 F. Supp. 2d at 939-41. It is enough to note that

the weight of authority relegates the "special needs" exception to non-criminal governmental activity. This Court concluded:

> There is nothing "special" in the need of law enforcement to detect evidence of ordinary criminal wrongdoing; even where crime is on the rise and the disorder and insecurity caused by criminal behavior in a community is grave, the Supreme Court has consistently held that "the gravity of the threat alone cannot be dispositive of questions concerning what means law enforcement officers may employ to pursue a given purpose." *City of Indianapolis v. Edmond*, 531 U.S. 32, 42 (2000). "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, th[e Supreme] Court has said that reasonableness generally requires the obtaining of a judicial warrant." *Vernonia School Dist.* [*v. Acton*], 515 U.S. [646,] 654 [(1995)].

*Id.* at 941.

The conclusion is inescapable here as well that section 436.1703(6) authorizes police officers to perform a search of minors without a warrant or a legal excuse for not obtaining one, and therefore the statute "endorses procedures to authorize a search that clearly do not comport with the Fourth Amendment." *Warshak*, 490 F.3d at 477. The statute, Michigan Compiled Laws § 436.1703(6), therefore is unconstitutional on its face. To the extent that the state defendants' defense is based on the validity of this statute, it must fail.

2.

The second ground advanced by the state defendants, as noted above, is that they cannot be responsible for the official conduct visited upon the plaintiffs in this case. The plaintiffs counter that argument by asserting that the "Party Patrol" – the interagency task force that required plaintiffs Stewart and Maness to submit to PBTs – received its funding from a state-wide series of grants that coordinate and provide training materials for enforcement of under-age drinking laws. The Party Patrol is comprised of officers from the Michigan State Police, the City of Mount Pleasant, Isabella County, and the Central Michigan University Police Department. The plaintiffs also point out that

the defendants are members and directors of the Governor's Traffic Safety Advisory Commission and the Office of Highway Safety Planning, which encourage municipalities to enforce the minor-in-possession statute. The plaintiffs contend that the State of Michigan reimbursed the overtime costs of the officers involved, and the State Police promulgated and disseminated to municipal departments a training manual that authorizes the use of PBTs on minors without a warrant.

The plaintiffs' have brought their lawsuit against the state defendants in their official capacity. As such, the suit is effectively an action against the State itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that "official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity") (quoting *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690 n.55 (1978)). States generally are immune from damage suits under the Eleventh Amendment. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (reasoning that "[f]rom birth, the States and the Federal Government have possessed certain immunities from suit in state and federal courts. . . . For the States, that immunity flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution") (internal citations omitted). However, the plaintiffs in this case seek only declaratory and injunctive relief against the state defendants; they ask for no damages. "The immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ibid.*

Nonetheless, state political units cannot be held vicariously liable for past constitutional violations under section 1983 solely on a theory of *respondeat superior*. *See Monel*, 436 U.S. at

694.  However, the Supreme Court has held that liability will be found when the alleged unconstitutional act "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers."  *Id.* at 690.  Similarly, in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the Court held that a political unit can be held liable under section 1983 for a decision by its policymakers when the official is the one who has the "final authority to establish municipal policy with respect to the action ordered."  *Id.* at 481 (plurality opinion).  "Officials can derive their authority to make final policy from customs or legislative enactments, or such authority can be delegated to them by other officials who have final policymaking authority."  *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.1993).

Because the plaintiffs' prayer for relief against the state defendants is limited to prospective injunctive and declaratory relief, it cannot be said that they seek to hold the state responsible for the past acts of the Thomas Township, City of Mount Pleasant, Central Michigan University Police Department or Isabella County police officers and officials.  There is a line of authority that suggests a plaintiff need not demonstrate an official policy or custom by a municipal or state defendant against whom only prospective relief is sought.  *Chaloux v. Killeen*, 886 F.2d 247, 251 (9th Cir. 1989) (finding "no persuasive reasons for applying the Court's 'official policy or custom' requirement to suits against counties only for prospective relief" and concluding "that the *Monell* doctrine did not intend to limit the reach of plaintiffs seeking prospective relief under § 1983 against the further exercise of governmental authority under an allegedly unconstitutional state statute"); *Nobby Lobby, Inc. v. City of Dallas*, 767 F. Supp. 801, 810 (N.D. Tex. 1991) ("The Court can find in the case law no reason to impose an 'official policy or custom' requirement in a situation where prospective relief alone is at issue and there is no threat of municipal financial liability"), *aff'd on*

*other grounds*, 970 F.2d 82 (5th Cir. 1992); *see also Gernetzke v. Kenosha Unified School Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001). The Sixth Circuit has yet to address this issue. *Cf. Leary v. Daeschner*, 228 F.3d 729, 740 n.4 (6th Cir. 2000) ("We assume, *without deciding*, that the prohibition on respondeat superior liability for municipal officers also applies where the plaintiffs are seeking injunctive relief rather than damages.").

But that issue need not be confronted head on in this case, because there is undisputed evidence in the record that the practice of administering warrantless PBTs contrary to the Fourth Amendment is excited by state policy reflected in section 436.1703(6). For instance, the "Party Patrols" are cooperative efforts in which the Michigan State Police participate with local agencies. The Michigan State Police training manual furnished to the local agency defendants includes a statement that PBTs can be administered to minors suspected of alcohol use even when they are not driving. State Police representatives Dianne Perukel and Gregory Zarotney testified that the state provides guidelines for a "formal disbursal plan" to be used by police investigating parties where under-age drinking may occur; the plan recommends three "processing stations," the first of which includes administration of a PBT. Although officers are cautioned against Fourth Amendment violations when attempting to enter dwellings and their curtilage, no restrictions are imposed upon the administration of PBTs. Finally, state policy is expressed in section 436.1703(6) itself, which, as noted above, authorizes practices that contravene the Fourth Amendment.

The Court concludes, therefore, that there is a sufficient connection between the conduct described in the complaint and the State's policy encouraging the use of PBTs upon minors in the absence of a warrant or an excuse for not obtaining one to subject the state defendants to the

prospective relief sought against them by the plaintiffs. The state defendants' motion for summary judgment, therefore, will be denied.

### B. Motion by defendant Thomas Township

Thomas Township also acknowledges that administration of a PBT is a search, but it bases its motion for summary judgment on the premise that exigent circumstances always exist as a matter of law because search warrants cannot be obtained before a teenager's blood alcohol content dissipates. Therefore, the Township argues, the statute is valid and the procedures employed by its officers thereunder are constitutional. The Township points to the deposition testimony of police officer Paul Ross, who testified that he would need two to three hours "at a minimum" to obtain a search warrant for a PBT under the local policies in place, although Ross acknowledged that search warrants for blood could be obtained in less than half that time for more serious cases. The Township couples this evidence with an affidavit from Kirk Mills, M.D., who posits that alcohol is metabolized at the average rate of fifteen milligrams per deciliter per hour, or 0.015% by weight per hour. However, Dr. Mills also avers that "[t]here is no method or formula to predict the rate at which an individual metabolizes or eliminates alcohol." Aff. of Kirk Mills, ¶ 14(b).

The Township thus contends that section 436.1703(6) is constitutional because exigent circumstances *always* exist whenever a police officer administers a PBT under the statute. This argument ignores the general rule that in the criminal context, warrantless searches are presumptively unreasonable, *Payton v. New York,*, 445 U.S. 573, 585-86 (1980); *Mincey v. Arizona*, 437 U.S. 385, 390 (1978); *Katz v. United States*, 389 U.S. 347, 357 (1967); the government bears the burden of establishing an exception to the warrant requirement in the case at hand, *United States v. Bates*, 84 F.3d 790, 794 (6th Cir.1996); the resulting reasonableness *vel non* of the search must

turn on the facts of each case, *United States v. Rohrig*, 98 F.3d 1506, 1517 (6th Cir. 1996) (in which the court "readily acknowledge[d] the hazards of venturing sweeping generalizations about the fact-specific inquiries called for under the Fourth Amendment"); *United States v. Pepple*, 707 F.2d 261, 263 (6th Cir. 1983); and blanket exceptions to the warrant requirement are disfavored, *Richards v. Wisconsin*, 520 U.S. 385, 395 (1997).

In posing this argument the Township relies heavily on *Rohrig v. United States*, in which the court noted that determination of exigent circumstances over time has been "case-by-case and fact-specific." 98 F.3d at 1519. That case certainly is relevant, but only tangentially so: *Rohrig* involved the court's effort at crafting a "new" type of exigent circumstance to deal with the immediate need to abate a public nuisance in a neighborhood, *id.* at 1519 (observing that the "existing categories do not occupy the entire field of situations in which a warrantless entry may be justified"), whereas the defendant here relies on a recognized form of exigency (the need to prevent the destruction of evidence); the police officers in *Rohrig* were not concerned primarily with the enforcement of criminal laws, *id.* at 1521 (noting that "the *Welsh* analysis has less relevance as one moves away from traditional law enforcement functions and toward . . . the 'community caretaking functions'" because "[u]nlike in *Welsh*, the officers here did not enter a private home for the purpose of questioning a suspect or searching for evidence of a suspected offense"), whereas in this case, the primary, if not sole, purpose of the officers' actions was to gather evidence of a crime. Nonetheless, the defendant argues that the existence of exigent circumstances must be evaluated by considering three factors: "(1) whether immediate government action was required, (2) whether the governmental interest was sufficiently compelling to justify a warrantless intrusion, and (3) whether the citizen's expectation of privacy was diminished in some way." *Ibid.*

The Township contends that the first factor is satisfied by the rapid rate of dissipation of alcohol in the bloodstream compared to the time it takes its police officers to obtain a search warrant. That may be true in some cases, but to say that there *never* is time for judicial intervention overstates the point. "The length of time required to obtain a warrant . . . is a factor in determining whether circumstances are exigent." *United States v. Radka*, 904 F.2d 357, 363 (6th Cir. 1990). The record in this case, however, fails to establish that the evidence sought "would probably be destroyed within the time *necessary* to obtain a search warrant," *United States v. Elkins*, 732 F.2d 1280, 1284 (6th Cir. 1984) (emphasis added), when measured against the time the Township police officers loitered at the scene in this case. According to the plaintiffs, the officers waited outside the house for approximately an hour and a half on the night of July 23, 2004 before demanding a breath sample from Katie Anne Platte. She was detained another fifteen minutes before the PBT was administered. Ashley Berden remained in the house with Platte, and when Berden came outside she was put in the back of a police car for another fifteen to thirty minutes before an officer told her that she had to take a PBT. The June 7, 2003 incident apparently involved even more delay: Berden had come home from a party where she had left her purse and she went to bed, but after the officers discovered her purse at the scene of the party, they came to her house at 4:00 a.m. to wake her and demand a PBT from her.

If alcohol dissipates as rapidly as the defendant claims, then there could be no justification for seeking a PBT from these minors because there would have been no hope of discovering any evidence of criminal behavior; the alcohol would have dissipated long before. But the Township's physician-affiant theorized that no formula can predict the rate of alcohol metabolization in an individual, and the plaintiffs offered evidence that alcohol is not fully absorbed into the blood until

-22-

an hour after ingestion.  If the person continues to drink, absorption continues for an hour after drinking stops.  So, according to the declaration of C. Dennis Simpson, a clinical neuropsychopharmacologist, alcohol would not dissipate from the average male's blood until two hours and twenty minutes after consumption ceases; for an average female, dissipation would not occur until three hours after consumption.

Officer Ross stated a search warrant could be obtained in Thomas Township in an hour and fifteen minutes.  Except for a delay of thirty minutes apparently required to contact a Saginaw County prosecutor after hours, there is no explanation why the procedure in Thomas Township takes that amount of time.  Officer Ross testified that during his career as a police officer, he never actually tried to obtain a search warrant to administer a PBT.  The Township has not explained why telephone procedures are not used to obtain search warrants at night.  "Procuring a warrant by telephone generally will take less time than procuring one by the traditional means of appearing before a magistrate."  *United States v. McEachin*, 670 F.2d 1139, 1146 (D.C. Cir. 1981).  *See also Steagald v. United States*, 451 U.S. 204 (1981) (observing that "[i]n routine search cases . . . the short time required to obtain a search warrant from a magistrate will seldom hinder efforts to apprehend a felon. . . .  [I]f a magistrate is not nearby, a telephonic search warrant can usually be obtained"); *United States v. Whitfield*, 629 F.2d 136, 142 (D.C. Cir. 1980) (finding that "with telephonic warrants now permissible . . . the delay [in obtaining a warrant] may not be long at all"); *United States v. Baker*, 520 F. Supp. 1080, 1083 (S.D. Iowa 1981) (concluding that agents had inadequate time to travel to magistrate to get warrant but had abundant time to obtain one by telephone). *Compare United States v. Hackett*, 638 F.2d 1179, 1184-85 (9th Cir. 1980), *cert. denied*, 450 U.S. 1001 (1981) (holding that 20 to 30 minutes was inadequate to obtain telephonic warrant

where police are pursuing suspect in a car), *with Baker*, 520 F. Supp. at 1083-84 (finding that one hour and 15 minutes was "abundant time" to obtain warrant by telephone, a process that takes not more than 30 minutes).

Taken in the light most favorable to the plaintiffs, the record in this case establishes that the Thomas Township police officers had time to request a search warrant to take breath samples from Platte and Berden. Whether they could have obtained a search warrant based on the information available to them is another question, since the defendant has not suggested any specific, articulable facts individualized to the plaintiffs to show probable cause that either girl had been drinking, but that is a different issue. The record certainly does not establish a justification for a blanket exception to the Fourth Amendment Warrant Clause for the administration of PBTs under the first *Rohrig* factor.

The Township insists that the second *Rohrig* factor supports a finding in favor of an exception to the warrant requirement based on language the Township cites from *Strutz v. Oakland County*, 308 F. Supp. 2d 767, 780 (E.D. Mich. 2004), in which "[t]he Court fully recognize[d] the need to thoroughly and vigorously investigate reports of underage drinking." That case does not support the Township's argument here, however. In *Strutz*, the police came to the plaintiffs' home to investigate a complaint of a loud New Year's Eve party involving teenagers. When the police arrived, they confronted the adult homeowners at the front door, who declined to let them enter. The police believed that teenagers who had been drinking alcohol were in the house, and the police forced their way in, administered PBTs, and issued citations to minors who registered a positive reading. The district court rejected the defendants' argument that the search was consistent with the Fourth Amendment, stating that "it cannot be said as a matter of law that it would

have been impractical to secure a warrant before entering Plaintiffs' residence." *Strutz*, 308 F. Supp. 2d at 780.

This second *Rohrig* factor – the importance of the governmental interest involved – was derived from *Welsh v. Wisconsin*, 466 U.S. 740 (1984), in which police officers followed a suspected drunken driver into his home to arrest him for that offense and to obtain evidence of his blood alcohol content. The police had neither an arrest nor a search warrant. The state court upheld the action on the basis of exigent circumstances, but the Supreme Court reversed and held that "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense, such as the kind at issue in this case, has been committed." *Id.* at 753. The *Rohrig* court cited *Welsh*'s holding that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense," *Welsh*, 466 U.S. at 753, when enumerating its own iteration of the relevant factors. *Rohrig*, 98 F.3d at 1516.

In this case, as in *Welsh*, the offense is relatively minor. The maximum penalty for a person convicted of being a minor in possession of alcohol is a $100 fine and no jail time, with graduated penalties for subsequent violations. Mich. Comp. Laws § 436.1703(1)(a), (b). The Court may refer to the penalty chosen as an "expression of the State's interest" in gathering evidence to prosecute this offense. *See Welsh*, 466 U.S. at 754. Given the petty nature of the offense for which the evidence was sought in this case, the Court finds that the second *Rohrig* factor augers against finding that the State's interest was sufficiently compelling to justify the warrantless search.

In addressing the third *Rohrig* factor, the Township argues that the minors here engaged in behavior that diminished their expectation of privacy by lighting a bonfire outside the house before

the police arrived and gathering together at a party. The Township draws an analogy to Donald Rohrig's conduct of blaring loud music out of his windows in the wee hours of the morning that disrupted the tranquility of the neighborhood and brought the police to his house, which they entered without a warrant when they could raise no response from the occupants. The *Rohrig* court concluded that Rohrig himself "undermined" his right of privacy by projecting his nuisance beyond the boundaries of his property, virtually inviting official intervention. *Rohrig*, 98 F.3d at 1522. But the Township here points to no equivalent conduct by Platte or Berden. There is no evidence that they started or contributed to the backyard bonfire or that they caused or created the gathering. The fact that they assembled with others at a social event, even one involving alcohol, does not undermine their own expectation of privacy when there is no evidence that they were drinking alcohol or otherwise contributing to a ruckus. The Court concludes, therefore, that the third *Rohrig* factor does not support the Township's position.

The Township has not demonstrated that Michigan Complied Laws § 436.1703(6) can survive constitutional challenge by means of a blanket exigent circumstances exception to the Warrant Clause of the Fourth Amendment or that it is entitled to a dismissal of the complaint as a matter of law. Therefore, the Township's motion for summary judgment will be denied.

### C. The plaintiffs' motion for partial summary judgment

The plaintiffs contend that they are entitled to a judgment on liability as a matter of law because the searches conducted in this case cannot be justified by resort to Michigan Complied Laws § 436.1703(6), and the undisputed facts demonstrate that those searches violated the Fourth Amendment. They also seek a declaration that the statute is unconstitutional on its face and an injunction against enforcement. For reasons stated earlier, the Court agrees that section

436.1703(6) is unconstitutional, but it does not necessarily follow that the compelled PBTs administered to the plaintiffs violated the Fourth Amendment.

Liability under 42 U.S.C. § 1983, under which the plaintiffs bring their federal claims, is predicated on a violation of the Constitution or laws of the United States perpetrated by someone acting under color of state law. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The plaintiffs have focused their claim for money damages on the theory that the PBTs were taken in this case without a warrant, such searches are presumptively unreasonable unless the state proves that an exception applies, the only conceivable exception would be exigent circumstances to prevent the loss or destruction of evidence, but that exception is unavailable to the defendants as a matter of law under the holding of *Welsh v. Wisconsin*, 466 U.S. 740 (1984).

*Welsh* does not compel the result the plaintiffs seek. The case is distinguishable on its facts because the intrusion involved entry into a home. Privacy interests in a personal dwelling are greater than those interests implicated by citizen-police encounters out in the open. The Supreme Court repeatedly has emphasized that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980). The cases that have invalidated warrantless searches on the basis of *Welsh* uniformly involve home entry. *See City of Jamestown v. Dardis*, 618 N.W.2d 495, 499 (N.D. 2000) (holding that "probable cause to believe minors were illegally consuming alcohol was a relatively minor infraction and did not create exigent circumstances to justify a warrantless entry into a home"); *State v. Bessette*, 105 Wash. App. 793, 800, 21 P.3d 318, 321 (Wash. Ct. App. 2001) (holding that exigent circumstances did not exist when police officer went into home to arrest minor he saw holding a bottle of beer because minor in possession is a minor offense and there was no evidence that minor was a threat

to the safety of other individuals); *Commonwealth of Penn. v. Roland*, 535 Pa. 595, 600-01, 637 A.2d 269, 271 (Pa. 1994) (holding that warrantless, nighttime entry into residence by police investigating report that there was underage drinking and marijuana use at a party was improper; there was no danger to police that would have necessitated immediate entry, and possibility that beer cans seen by officers might have been removed before warrant could be obtained would not support warrantless entry to investigate summary offense of underage drinking).

Moreover, in *Welsh*, the Supreme Court stated that "application of the exigent-circumstances exception in the context of a home entry should *rarely* be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed." *Welsh*, 466 U.S. at 753 (emphasis added). This language leaves open the possibility of a situation where exigent circumstances could justify a warrantless home entry, and it certainly does not connote an absolute ban on using exigent circumstances to justify a lesser warrantless intrusion.

The "gravity of the underlying offense" is but a factor, albeit an important one, "to be considered when determining whether any exigency exists." *Ibid.* However, the Court is not prepared to conclude as a matter of law that the offense of minor in possession of alcohol is so insignificant a transgression that warrantless searches can *never* be conducted to gather evidence of this crime. If officers must act so quickly to prevent the immediate destruction of evidence that they cannot obtain a search warrant within the time it would reasonably take to procure one, then administration of a PBT without a warrant may be consistent with the Fourth Amendment, *Elkins*, 732 F.2d at 1284, given a sufficient showing of probable cause, *Kirk v. Louisiana*, 536 U.S. 635, 637038 (2002) (per curiam) (holding that probable cause must be accompanied by a warrant, exigent circumstances, or some other exception to the warrant requirement to make a search constitutional).

In this case, the record presents fact questions on the material issue of whether exigent circumstances existed. The police officers from Thomas Township responded to a neighborhood complaint of a party and a bonfire; when they arrived and identified themselves, many of the party-goers ran and some retreated into the home on the property; there were approximately twenty individuals involved; been cans were strewn about; and a fire was burning in a container in the back yard. The Township's evidence on the rate of blood-alcohol dissipation gives rise to a fact question whether the officers could have procured a warrant for PBTs before the evidence was destroyed. Taking the evidence in the light most favorable to the Township, the Court concludes that summary judgment on the issue of liability for money damages cannot be granted as a matter of law.

On the issue of whether an injunction should issue preventing the enforcement of Michigan Complied Laws § 436.1703(6), the Court considers the following four factors: (1) the likelihood of the party's success on the merits of the claim; (2) whether the injunction will save the party from irreparable injury; (3) the probability that granting the injunction will substantially harm others; and (4) whether the public interest will be served by the injunction. *See Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Prods.,* 134 F.3d 749, 753 (6th Cir. 1998), *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997); *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985). Once the merits of the claims are determined, for a permanent injunction the moving party need show only (1) a continuing irreparable injury if the court fails to issue the injunction, and (2) the lack of an adequate remedy at law. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998). Other factors are relevant, as well, such as the probability that granting the injunction will substantially harm others, and whether the public interest will be served by the injunction. *See Rock and Roll Hall of Fame,* 134 F.3d at 753.

The plaintiffs have averred that they are fearful of gathering with peers because of the prospect of being compelled to submit to PBTs administered pursuant to the statute. The danger that minors might be subjected to the search procedure under an unconstitutional statute is a sufficient harm to warrant issuance of an injunction against enforcement of the statute. A party seeking an injunction has an adequate remedy at law if the harm she seeks to avoid or prevent can be sufficiently redressed by an award of damages. But there is no adequate remedy at law for individuals suing a state in federal court because the Eleventh Amendment bars the award of damages. *Temple Univ. v. White*, 941 F.2d 201, 215 (3d Cir. 1991); *Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Social & Rehabilitation Servs.*, 31 F.3d 1536, 1543 (10th Cir. 1994). Moreover, "there is potential irreparable injury in the form of a violation of constitutional rights." *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987).

The other factors also favor the issuance of an injunction. The defendants cannot claim that they would be harmed by an injunction since they have "no right to the unconstitutional application of state laws." *Tyson Foods, Inc. v. McReynolds*, 865 F.2d 99, 103 (6th Cir. 1989). Finally, "under the fourth prong of the test, it is not in the public interest to perpetuate the unconstitutional application of a statute." *Ibid. See also Planned Parenthood Ass'n of Cincinnati*, 822 F.2d at 1400 ("[T]he last factor – whether the public interest is served by the injunction – is also met, since the public is certainly interested in the prevention of enforcement of ordinances which may be unconstitutional.")

## III.

The Court concludes that Michigan Complied Laws § 436.1703(6) is unconstitutional on its face because it is repugnant to the Fourth Amendment, the state defendants have not shown that they

are entitled to judgment as a matter of law otherwise on the grounds of the exigent circumstance or the special needs exceptions to the Warrant Clause, and defendant Thomas Township has not established that the statute can be saved by application of a blanket exigent circumstances exception. The Court also finds that the plaintiffs have established a right to injunctive relief as a matter of law, but fact issues preclude judgment in their favor on the question of Thomas Township's liability for damages.

Accordingly, it is **ORDERED** that the motion for summary judgment by defendants Colonel Peter Munoz and Governor Jennifer Granholm [dkt #75] is **DENIED**.

It is further **ORDERED** that the motion for summary judgment by defendant Thomas Township [dkt #72] is **DENIED**.

It is further **ORDERED** that the plaintiffs' motion for summary judgment [dkt #74] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that defendants Colonel Peter Munoz, Governor Jennifer Granholm, and Thomas Township, their servants, agents and employees, and those in active concert and participation with them, are **RESTRAINED AND ENJOINED** from enforcing or imposing sanctions under Michigan Complied Laws § 436.1703(6), and from enforcing any policy or rule enacted under the authority of said statute.

It is further **ORDERED** that counsel shall appear for a status conference at the Court's chambers at **3:00 p.m.** on **October 23, 2007** to discuss further case management.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  September 26, 2007

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 26, 2007.

s/Felicia M. Moses
FELICIA M. MOSES